Edward F. Lamolinara, Appellant *v.* Colonel James D. Barger, Commissioner of Pennsylvania State Police, and the Pennsylvania State Police.

Argued March 10, 1977, before Judges CRUMLISH, JR., KRAMER and ROGERS, sitting as a panel of three.

*William E. Schadler,* with him *Alvin B. Lewis,* and *Lewis, Brubaker & Christianson,* for appellant.

*Glenn Gilman,* Deputy Attorney General, with him *J. Andrew Smyser,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE KRAMER, May 25, 1977:

This case comes before us by way of a Petition for Review of certain actions taken by the Commissioner of the Pennsylvania State Police. Because there were no official proceedings below and the entire record consists of a single letter from the State Police to the petitioner, Edward F. Lamolinara, we shall set forth as "facts" only those events and matters upon which the briefs of the parties are in agreement.

Lamolinara was a member of the Pennsylvania State Police from September of 1965 until February 9, 1967. On February 9, 1967, Lamolinara's active employment was ended. The exact nature of this "termination" and the reasons behind it are matters in dispute between the parties and lie at the heart of the present controversy, which appears to be only the latest skirmish in a continuing legal struggle between Lamolinara and the State Police. Simply stated, Lamolinara desires to examine his personnel file to determine the reasons for his release from his duties as an officer. He contends that the right to inspect his employment records arises under the provisions of what is popularly known as the "Right-to-Know Law."[1] We agree.

---

[1] Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §66.1-66.4.

The narrow issue is whether or not Lamolinara's personnel records constitute a "public record" under the Right-to-Know Law. The Right-to-Know Law defines a public record in Section 1 of the Act, 65 P.S. §66.1(2), as follows:

(2) 'Public Record.' Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and *any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person* or group of persons: Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act. (Emphasis added.)

Respondents do not contend that Lamolinara's personnel records fall within any of the listed exceptions to the definition of "public record." They simply con-

tend that personnel records are not "public records" under the Right-to-Know Law. For authority, they rely exclusively on this Court's opinion in *West Shore School District v. Homick,* 23 Pa. Commonwealth Ct. 615, 353 A.2d 93 (1976). In *West Shore* this Court denied a teacher's request to examine the contents of his personnel file upon concluding that those contents were not a "public record" as they did not "(1) constitute a minute, order or decision of the Board or (2) fix any rights, privileges, immunities, duties or obligations of the teacher." 23 Pa. Commonwealth Ct. at 619, 353 A.2d at 95. The crucial factor underlying that conclusion was the fact that the teacher did not allege that the records would reflect any action by the School Board that affected any of his personal or property rights, privileges, immunities, duties or obligations. The teacher was merely concerned that the records may have contained information relevant to some future decision or action by the Board. Judge MENCER's opinion noted pertinently:

> A decision 'fixing' rights or duties of a person is not the same thing as a gathering of information, notations, and evaluations that may or may not be utilized at some future time to reach a decision that would fix rights or duties.

23 Pa. Commonwealth Ct. at 619, 353 A.2d at 95.

The present case is clearly distinguishable. Here, the petitioner was removed from his position as a state police officer by an action of the Commissioner's office. Obviously, this removal was the result of a "decision." *Cf. Fatscher v. Springfield School District,* 28 Pa. Commonwealth Ct. 170, 367 A.2d 1130 (1976) (suspension of a teacher held to be a "decision" affecting personal or property rights within the meaning of Section 2 of the Local Agency Law[2]). We must now determine whether this decision was one "fixing

---

[2] Act of December 2, 1968, P.L. 1133, *as amended,* 53 P.S. §11302.

the personal or property rights, privileges, immunities, duties or obligations" of Lamolinara.

First, we do not read the term "fixing" to require the affirmative establishment or creation of rights, privileges, immunities, duties or obligations. Although such a narrow construction would be quite possible, we believe it in keeping with the spirit and intent of the Right-to-Know Law to construe "public record" to include decisions which establish, alter, abolish or deny rights, privileges, immunities, duties or obligations; in short, decisions which affect them.

Noting that the very reason for the present action is Lamolinara's continuing inability to discover the nature of his removal from duty and the reasons behind it, we do not believe it necessary to know these beforehand in order to determine that certain of his property rights were affected by the decision to remove him. Under the law in effect on February 9, 1967, the date of his last day of duty, Lamolinara could not be dismissed or refused reenlistment except by conviction on formal charges by a Board of Court-Martial. Section 711(b) of the Administrative Code, Act of April 9, 1929, P.L. 177, 71 P.S. §251(b) (amended 1967).[3] This gave Lamolinara an enforceable expectancy in his continued public employment. That is, a property right in his employment. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972); *Amesbury v. Luzerne County Institution District*, 27 Pa. Commonwealth Ct.

---

[3] By the Act of December 5, 1967, P.L. 671, subsection (b)(4) was added to Section 711. The new subsection excluded officers with less than 18 months service from the protections of the dismissal procedures of 711(b). Simultaneously, Section 205 of the Code, 71 P.S. §65 was amended by the addition of subsection (f) by the Act of December 5, 1967, P.L. 673. Subsection (f) provides that officers with less than 18 months service, such as Lamolinara was on February 9, 1967, can be dismissed without a court martial for violation of rules, incompetency, or inefficiency.

418, 366 A.2d 631 (1976).[4] We are not concerned here with whether Lamolinara's removal from duty violated his right to a court-martial under Section 711(b). The removal may have been a *dismissal* or, as respondents contend, a *suspension without pay*. The importance of Section 711(b) to this case is that it conferred a property right in his employment on Lamolinara. His removal from duty for whatever reason, valid or not, whether by dismissal or suspension, clearly *affected* that property right. That alone is sufficient to bring the decision to remove him within the *Right-to-Know Law*.

Lest any doubt remain, we note that the decision to remove Lamolinara from duty also affected his rights under the then existing State Police Retirement System.[5] Respondents admit as much in their briefs, which state that Lamolinara, without ever returning to work after February 9, 1967, was granted a disability retirement allowance[6] on February 10, 1970.

In view of the foregoing conclusions, we hold that petitioner is entitled to the opportunity to inspect the contents of his personnel file relating to his removal from active duty and his present status with the Pennsylvania State Police.

ORDER

AND Now, this 25th day of May, 1977, it is hereby ordered that the respondents, The Pennsylvania State Police and the Commissioner of the Pennsylvania

---

[4] We note that even under the statutes presently in effect, *see* note 3 supra, officers with less than 18 months service have been held to have a clearly cognizable property right in their employment. *Bolden v. Pennsylvania State Police*, 371 F. Supp. 1096 (E.D. Pa. 1974).

[5] Act of June 29, 1937, P.L. 2423, 71 P.S. §§1761.1-1761.27 (repealed 1974).

[6] *See* Act of June 29, 1937, P.L. 2423, 71 P.S. §1761.13 (repealed 1974).

State Police, make available to the petitioner, Edward F. Lamolinara, for the purpose of examination and the taking of extracts or making of copies, those records in their possession relating to the removal of petitioner from duty on February 9, 1967 and his present status with the Pennsylvania State Police.