William H. Mitman, Jr., Esquire, Appellant *v.* County Commissioners of Chester County, Appellee.

359

Submitted on briefs October 7, 1980, to President Judge CRUMLISH and Judges MENCER, ROGERS, MAC-PHAIL and PALLADINO. Judges WILKINSON, JR., BLATT, CRAIG and WILLIAMS, JR. did not participate.

*William H. Mitman, Jr.*, appellant, for himself.

*John S. Halsted,* with him *Paula F. Francisco,* for appellee.

OPINION BY JUDGE PALLADINO, December 16, 1980:

The District Attorney office of Chester County stores in the County Data Processing Center a series of computer tapes known as the "history file". The history file contains information on every closed criminal case in the county dating back to 1972 and includes the name of the accused, the date of the complaint, bail information, chronological information as to the events that took place during the life of the case, the entry of appearance of public defenders and defense counsel, the assignment of the assistant district attorney and/or the "trial team" handling the prosecution, and the final disposition of the case. In May 1979[1] appellant requested from the district attorney a history file printout of all the information with respect to all the cases assigned to a particular assistant district attorney. The district attorney refused the request. Pursuant to Section 4 of the Act of June 21, 1957 (Right-To-Know Act), P.L. 390, *as amended,* 65 P.S. §66.4, an appeal was taken to the court of common pleas. Holding that the information requested is not a "public record" as defined in Section 1(2) of the Right-To-Know Act, 65 P.S. §66.1(2), the lower court denied the appeal.

The focus of the parties is obviously on the assignment of assistant district attorneys to particular cases. The question before the Court is whether the county history file, especially information relating to the assignment of assistant district attorneys to spe-

---

[1] In March 1979 a similar request was made of the County Commissioners. The request was refused on the basis that the district attorney was the only individual who could authorize the disclosure of the history file.

cific cases, is a public record under the Right-To-Know Act and thus subject to public inspection.

Section 1(2) of the Right-To-Know Act defines public record as in pertinent part:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons. . . .

65 P.S. §66.1(2).

Emphasizing that a "broad construction adheres . . . to an initial determination that a document is a 'public record' ", *Marvel v. Dalrymple,* 38 Pa. Commonwealth Ct. 67, 72, 393 A.2d 494, 497 (1978), appellant argues that the information sought is evidence of a "decision" reached by an "agency", the District Attorney office, and fixes the duties of a particular person, to wit, an assistant district attorney.

Since it is apparent that the history file is not an "account, voucher or contract", the definition's "minute, order or decision . . . fixing the personal or property rights, privileges, immunities, duties or obligations" language must be considered. That phrase is to be read as including, but not limited to, "decisions which establish, alter, abolish or deny rights, privileges, immunities, duties or obligations." *Lamolinara v. Barger,* 30 Pa. Commonwealth Ct. 307, 311, 373 A.2d 788, 790 (1977). We cannot say that the assignment of an assistant district attorney to a specific case established, altered, abolished or denied any duties of that assistant district attorney.[2] His duties were es-

---

[2] The same certainly may be said of the assignment of an assistant district attorney to a case as it relates to the rights, privileges, immunities, duties or obligations of the accused.

tablished when he accepted the position with the office; only an opportunity for the application of his skills, talents and judgment arises by the case assignment.[3]

Our inquiry does not end there, however, "[W]e believe the legislature intended the generic definition of a public record contained within the Right-To-Know Act to incorporate by implication those specific definitions of 'public record' contained in statutes allowing for public access to particular documents of particular agencies." *Marvel, supra* at 75, 393 A.2d at 498.

---

[3] The problem of interpreting the breadth of the Right-To-Know Act's definition of a public record has been faced by this Court on several occasions. More than once has a review of the case law been a substantial factor in the resolution. *See Mergenthaler v. State Employes' Retirement Board*, 33 Pa. Commonwealth Ct. 237, 372 A.2d 944 (1977); *Friedman v. Fumo*, 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973). Our synthesis of the case law with the facts in the instant case leads us to conclude that the assignment of an assistant district attorney to a criminal case lacks the consequential nature (*see Marvel, supra* (police rank promotion examinees' written exam answer papers, numerical scores for each part of the exam, and composite scores are public records); *Lamolinara, supra* (public records include contents of a state police trooper's personnel file as they relate to his removal from active duty); and *Young v. Armstrong School District*, 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975) (list of kindergarten pupils enrolled in the school district is a public record)) and financial overtones (*see Mergenthaler, supra* (names and addresses of retired state employees are public records); *Moak v. Philadelphia Newspapers, Inc.*, 18 Pa. Commonwealth Ct. 599, 336 A.2d 920 (1975) (public records include payroll records of the Philadelphia Police Department); *Friedman, supra* (definition of public record is broad enough to encompass list of persons taking state examination for qualification as a Certified Public Accountant). *See also McMullan v. Wohlgemuth*, 453 Pa. 147, 308 A.2d 888 (1973), *appeal dismissed*, 415 U.S. 970 (1973) (definition of public record is broad enough to encompass Department of Public Welfare lists containing names and addresses of and amounts received by Philadelphia public assistance recipients, but at least one of the definition's exceptions barred disclosure).) to fit the instant case within the decisions holding inclusion within the definition.

Under Section 11 of the Criminal History Record Information Act (CHRI Act), 18 Pa. C. S. §9111, criminal justice agencies (including District Attorney offices) have a duty to maintain a criminal history record information. The CHRI Act defines criminal history record information as, in pertinent part, "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom." 18 Pa. C. S. §9102.

Insofar as the history file contains information relating to the name of the accused, the date of the complaint, docket entries, and the disposition of the case, it is to that extent criminal history record information and, pursuant to Section 21(b)(2) of the CHRI Act, 18 Pa. C. S. §9121(b)(2),[4] subject to appellant's examination. However, the history file's notations of assistant district attorney assignments do not fit within the definition of criminal history record information. Therefor, with respect to those history file notations, the CHRI Act's provisions for dissemination do not come into play for purposes of the Right-To-Know Act.

Accordingly, we will enter the following

ORDER

AND Now, December 16, 1980, the order of the Court of Common Pleas of Chester County, docketed to Civil Action No. 202-P Misc. Term 1979, dated August 23, 1979, denying the appeal of William H. Mitman, Jr., and discharging the Rule to Show Cause granted July 6, 1979, is affirmed.

---

[4] See also 37 Pa. Code Chpt. 195.

CONCURRING OPINION BY JUDGE ROGERS:

I disagree with the majority's holding that the records sought by the appellant were not public records as generally defined by Section (2) of the (Right-to Know) Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §66.1(2). I can discern no significant difference between the information here sought and that obtained as the result of our holdings in *Young v. Armstrong School District*, 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975), and *Friedman v. Fumo*, 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973), both being cited in note 3 of the majority opinion. However, I concur in the result because the records sought by the appellant, described by the majority as "a history file printout of all the information with respect to all the cases assigned to a particular assistant district attorney", are material "access to . . . which is prohibited, restricted or forbidden by statute law" specifically excepted from the definition under a proviso of Section 66.1.

The records sought by the appellant clearly comprise criminal history record information as defined in the Criminal History Record Information Act at 18 Pa. C. S. §9102. As such, their dissemination to a noncriminal justice agency is restricted by 18 Pa. C. S. §9121(b)(2) which requires the extraction from case histories of any information relating to the initiation of criminal proceedings where there is a disposition of acquittal, dismissal or withdrawal of charges, the entry of a nolle prosequi, an indefinite postponement, or where the individual has otherwise been found not guilty. The appellant was clearly not entitled to "all the information with respect to all the cases assigned to a particular assistant district attorney", his opponent in a race for the office of District Attorney. Indeed, the infomation which he was really seeking—of his opponent's apparent failures as a

prosecutor—was exactly what was restricted. I think that his request, as made, was properly refused.

President Judge CRUMLISH joins in concurring opinion.