558 A.2d 909

Anthony J. Pastore, t/a Pastore Agency, Petitioner
*v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Submitted on briefs March 7, 1989, to Judges CRAIG, BARRY and PALLADINO, sitting as a panel of three.

*Arthur S. Cavaliere, Cavaliere and Skale, P.C.,* for petitioner.

*Victoria A. Reider,* Assistant Counsel, with her, *Theodie L. Peterson, III,* Chief of Litigation and *Linda J. Wells,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, May 5, 1989:

The question on the merits in this proceeding under the Pennsylvania Right-to-Know Law,[1] is whether an applicant is entitled to see the entire contents of an administrative agency's file on him, including the results of all investigations made by the agency, or whether he is barred from seeing any or all of those documents because they are not "public records" within the statutory definition of that term.

The context in which the present proceeding arose was an investigation by the Insurance Department of Anthony J. Pastore, t/a Pastore Agency, for various alleged violations of the Insurance Department Act of 1921[2] and of the Unfair Insurance Practices Act,[3] and their

---

[1] Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§66.166.4.

[2] Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §§1 through 297.4

[3] Act of July 22, 1974, P.L. 589, *as amended,* 40 P.S. §§1171.1-1171.15.

implementing regulations, which led to the department's issuance of an order to show cause why the Insurance Commissioner should not suspend, revoke or refuse to renew Pastore's license to sell insurance or impose civil penalties on him in relation to any factual allegations contained in the order that were proved at a hearing. Before the date scheduled for the hearing, Pastore's counsel filed a motion for discovery, alleging that he had asked the department to view "the entire contents of your file, including the results of all investigations made by your office by complainants or investigators and any other pertinent information you may possess with regard to your charges against Mr. Pastore," Record 9a, and that the department had refused his request.

The presiding officer in the Insurance Department proceeding granted that portion of Pastore's motion seeking witness statements in the possession of the department and denied as overly broad the portion of the motion seeking the entire contents of the department's investigative file for purposes of inspection and copying. R. 22a-23a. Pastore appealed to this court from the ruling on his discovery motion.

The department previously moved to quash Pastore's appeal as being interlocutory in the context of the violation proceeding. This court denied that motion on the grounds that rights to inspect "public records" under the Right-to-Know Law are general in nature and should not be denied merely because they are asserted during administrative proceedings. Although such rights do not supplant or enhance discovery rights provided by rules and regulations establishing proper procedures in administrative proceedings (hence this court's earlier denial of Pastore's request for a stay of the Insurance Department proceeding pending a decision on this appeal), the denial of the *independent* right to examine records under the Right-to-Know Law was held to be a final order subject

to appeal, rather than a nonappealable interlocutory order within the context of the department's violation proceeding. *Pastore v. Insurance Department* (No. 1803 C.D. 1988, filed December 7, 1988).[4]

Section 2 of the Right-to-Know Law provides:

> Every public record of an agency shall, at all reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania.

65 P.S. §66.2.

Section 1 defines "public record" as follows:

> (2) 'Public Record.' Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That *the term 'Public records' shall not include any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties,* except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publica-

---

[4] In the absence of any request for reconsideration of this court's order of December 7, 1988, that order is final and has become the law of the case. Because the court has considered and decided the question on appeal, the ruling is not subject to reversal in a subsequent appeal on another phase of the same case. *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 408 Pa. 169, 173-74, 182 A.2d 682, 684 (1962).

tion of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

65 P.S. §66.1(2) (emphasis added).

Pastore contends that the only sensible interpretation of the above definition of "public records" is one that prohibits examination of investigative information when that information does not affect property rights, privileges, immunities, duties or obligations of the person making the request, but permits examination of investigative information when such rights may be affected. In support of this argument, Pastore cites *Barton v. Penco*, 292 Pa. Superior Ct. 202, 436 A.2d 1222 (1981) and *Lamolinara v. Barger*, 30 Pa. Commonwealth Ct. 307, 373 A.2d 788 (1977).

In *Barton* the Superior Court held that a police officer was not entitled, under the Right-to-Know Law, to inspect the contents of the investigative file resulting from the police department's investigation after an unidentified complainant accused the officer of receiving stolen goods. The investigation showed that the accusation was groundless, but the officer sought to determine the name of his accuser. Pastore points to the portion of the opinion where the court noted that because the investigation had cleared the officer, his rights had not been altered in any way. Therefore, the court believed that the contents of the investigative file[5] did not constitute a "decision by an

---

[5] The court noted the officer had not been denied access to his personnel file.

agency fixing the personal ... rights ... of any person" and so fell outside the basic definition of public records. However, the court went on to hold in the alternative that even if the investigative file were to be considered a "decision" affecting the officer's rights, the contents of that file would still be barred from examination under the exception for materials disclosing the institution, progress or result of an investigation undertaken by the agency in the performance of its official duties. *Barton,* 292 Pa. Superior Ct. at 205-06, 436 A.2d at 1224.

In *Lamolinara* a former State Police officer sought to examine his personnel file to determine the reasons for his release from his duties. The State Police contended that the personnel file did not constitute a public record under this court's decision in *West Shore School District v. Homick,* 23 Pa. Commonwealth Ct. 615, 353 A.2d 93 (1976). In that case the court denied a teacher's request to examine the contents of his personnel file, concluding that the contents of the file could not be deemed to be a decision "fixing" rights of the teacher where he had alleged no action by the board affecting his rights. In *Lamolinara* the court readily distinguished *West Shore School District* because the removal of the officer from his position obviously was a decision affecting his property rights with regard to his employment and his retirement. As the Insurance Department points out, however, what was at issue in *Lamolinara* was access to a *personnel file,* not access to an investigative file. There was no mention of an investigation in that case, and the State Police did not claim that the records to which the officer sought access fell within the exception relating to investigations.

Shortly after the 1957 enactment of the Right-to-Know Law, the Pennsylvania Supreme Court construed the statute in the case of *Wiley v. Woods,* 393 Pa. 341, 141 A.2d 844 (1958). There a citizen petitioned a city planning commission to recommend a zoning change to

the city council, and the commission denied the petition. After the denial, a member of the council made an inquiry to the city's planning department concerning the matter. A member of the staff of that department conducted a survey of the properties in the area in question, prepared field investigation notes of the survey and submitted a report to the council member. The person who had petitioned for the zoning change sought access to all documents in the possession of the planning department relating to the matter. The department permitted her to examine the report to the member of council and the record of the commission's denial of the rezoning petition but not the field investigation notes. On appeal from a common pleas court decision largely granting the relief sought, the commission and the department argued, among other things, that the investigative materials exception to the Right-to-Know Law protected the field investigation notes from disclosure.

In reversing the trial court's conclusion that the Right-to-Know Law was not applicable, because it addressed the rights of citizens in general, not of those with a peculiar interest in the subject matter such as the petitioner, the Court said:

> Undoubtedly, the legislature intended through the medium of the statute a clarification of the right of examination and inspection of public records by all citizens, *regardless of their interest or the extent or nature thereof*. Within the statutory language is embraced all citizens and not simply those citizens who by some courts might be denied the right of examination and inspection because of lack of interest or legitimate purpose.

*Wiley v. Woods*, 393 Pa. at 349-50, 141 A.2d at 849 (emphasis added). The Court had no difficulty in concluding that the field investigation notes were within the

investigative materials exception provided in the statute and hence were outside the definition of public records. *Id.* at 347-48, 141 A.2d at 848.

Pastore's position in this case appears to result from conflating the terms of the *definition* of public records with the terms of the investigations *exception* to that definition. However, a sequential analysis of the question of whether particular documents are public records reveals the error in that position. To decide that question, an agency or tribunal must first determine whether the documents are within the general statutory definition of public records—that is, whether (apart from the provisions relating to public contracts and bookkeeping matters) the information sought is "[1] a minute, order or decision by an agency [2] fixing [3] the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons ...." Although the terms "minute, order or decision" and "fixing" have been construed broadly by the courts, so as not to restrict unduly the access granted by the statute,[6] they have not been

---

[6] In *Lamolinara* this court construed "fixing" broadly:

> First, we do not read the term 'fixing' to require the affirmative establishment or creation of rights, privileges, immunities, duties or obligations. Although such a narrow construction would be quite possible, we believe it in keeping with the spirit and intent of the Right-to-Know Law to construe 'public record' to include decisions which establish, alter, abolish or deny rights, privileges, immunities duties or obligations; in short, decisions which affect them.

*Lamolinara*, 30 Pa. Commonwealth Ct. at 311, 373 A.2d at 790.

Because the removal of the officer from his duties was a "decision" affecting his property rights, the court held that he was entitled to inspect the contents of his file related to his removal from active duty and his present status with the State Police, thereby incorporating those materials within the construction of the "decision" that affected the officer. *Id.* at 312, 373 A.2d at 791.

In *Young v. Armstrong School District*, 21 Pa. Commonwealth Ct. 203, 344 A.2d 738 (1975), this court held that although a list of names of kindergarten students (which was sought by parents organ-

construed out of existence. In other words, the general definition requires some form of action by an agency that has some effect on someone.

Although that definition is broad, not every scrap of paper in an agency's file on an individual or corporation meets it. This concept explains the holding of this court in *West Shore School District* and the first alternative holding of the Superior Court in *Barton*. In the former case the teacher had not alleged any action by the school board whatsoever, and in the latter the court could discern no effect on the officer's rights or interests as a result of an investigation that cleared him of allegations of wrongdoing.

Once particular information has been determined to be within the general definition of public records, then the agency or tribunal must determine whether it falls within one of the enumerated exceptions to that definition. Where it does, the information is protected from disclosure even though that information otherwise constitutes part of a "decision fixing ... rights ...."

In the present case, the ultimate disposition of the Insurance Department's violation proceeding against Pastore will be a "decision." Should the result be adverse to Pastore, that decision will affect his personal and property rights relating to his license to sell insurance and his possible liability for the payment of civil penalties. Because that decision has not yet been made, one might argue that related materials such as the investiga-

---

izing opposition to major changes in the kindergarten program) was only a compilation of facts submitted by parents and not a determination by the school district, the list was the sort of record that would form the basis for decisions determining school, session and transportation assignments, and hence fell within the definition of public records. *See also McMullan v. Wohlgemuth*, 453 Pa. 147, 308 A.2d 888 (1973), *appeal dismissed*, 415 U.S. 970 (1974), and *Friedman v. Fumo*, 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973).

tive file sought by Pastore are not yet part of any decision, and so are outside the definition of public records.

However, the Insurance Department's action in *commencing* the violation proceeding by filing the order to show cause may be viewed as a "decision" of the agency having an effect on Pastore's rights. Before the filing Pastore was in possession of a valid license and was entitled to sell insurance in this state. Although the filing itself did not have the effect of revoking or suspending Pastore's license, the filing did create a situation in which Pastore was compelled to respond at a hearing to allegations of improper conduct or risk losing his license by default—the status quo with regard to his rights changed dramatically.

This situation is different from that in *Barton,* where the police officer did not have to respond in a formal proceeding to the allegations that gave rise to the department's investigation of him. There the officer had only to await the outcome of the investigation. The department took no action against him during the investigation, and when the outcome proved to be favorable, his rights were not affected as a result of the investigation. The situation here is more nearly analogous to that in *Lamolinara,* where the State Police had removed the officer from his duties (without informing him of a final determination regarding his status) on the basis of information contained in his personnel file. In the absence of a claim that that information was within some exception to the general definition of public records, the court concluded that the information was subject to examination under the Right-to-Know Law. Therefore, we conclude that the Insurance Department's investigative file on Pastore, because it formed the basis for the department's action in commencing the violation proceeding, would be a public record subject to examination if no exception applied. *See* n.6, above.

However, the investigative file sought by Pastore falls squarely within the exception that excludes from the definition of public records "any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties... ." The public policy reasons for maintaining the confidentiality of the results of investigations properly undertaken by public agencies in the performance of their official duties has been elaborated elsewhere and need not be repeated here.[7] Pastore has directly sought access under the Right-to-Know Law to that which the statute expressly excludes from the definition of a "public record." Accordingly, we shall affirm the order of the presiding officer in the Insurance Department violation proceeding that denied Pastore access to the department's investigative file.

### ORDER

NOW, May 5, 1989, the order of the Presiding Officer in the Insurance Department's proceeding against Anthony J. Pastore, t/a Pastore Agency, at Docket No. P88-2-5, dated July 25, 1988, denying Pastore's request to inspect and copy the entire contents of the department's investigative file on Pastore, is affirmed.

---

[7] *See, e.g., Barton v. Penco,* 292 Pa. Superior Court at 206, 436 A.2d at 1224.