612 A.2d 553

**Richard GUTMAN, Petitioner,**

v.

**PENNSYLVANIA STATE POLICE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1991.

Decided June 22, 1992.

---

568

Richard Gutman, petitioner, pro se.

Joanna Reynolds, for respondent.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

DOYLE, Judge.

Richard Gutman appeals a decision of the Pennsylvania State Police denying his request for documents [1] made pursuant to the Pennsylvania Right to Know Act (Act).[2]

By letter dated January 23, 1991, Gutman requested the State Police to disclose all departmental regulations, directives, general orders and special orders concerning:

1. Statements of the responsibilities of the various bureaus and divisions.

2. Use of deadly force.

3. Sobriety checkpoints, drug checkpoints and interdiction programs.

4. Intelligence-gathering and file-keeping regarding political activity, subversive activity and terrorism.

On January 28, 1991, the State Police denied this request on the the grounds it had asserted in previous correspondence denying two prior document requests Gutman had made on October 2, 1990 and October 26, 1990. In a letter dated October 23, 1990, the State Police had rejected Gutman's first request on the grounds that the requested documents were not public records as defined by the Act. In a letter dated January 11, 1991, the State Police denied Gutman's second request for the following reasons:

Unfortunately, we must deny your request, unless we have the benefit of knowing the context in which your request is

1. This case was reassigned to the writer on February 10, 1992.

2. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4.

made. While some of this Department's records may constitute "public records" under the Act, we feel entitled to know that the records do not fall within any of the Act's exceptions, prior to authorizing disclosure. Your request does not provide sufficient information upon which to base our decision.

On February 7, 1991, Gutman appealed to this Court the State Police's January 28, 1991 denial of his January 23, 1991 document request.

Gutman contends first that he has a right under the Act to access the documents requested in his January 23, 1991 letter, and second, that the State Police improperly considered his motive for requesting disclosure when it denied access to the documents in question.

■ Section 2 of the Act, 65 P.S. § 66.2, provides that "[e]very public record of an agency shall ... be open for examination and inspection by any citizen of the Commonwealth...." The legislature intended this Act to allow citizens of the Commonwealth access to public records regardless of their interest in seeking the disclosure; a citizen may not be denied access to public records because of lack of interest or for a lack of a "legitimate" purpose. *Wiley v. Woods,* 393 Pa. 341, 141 A.2d 844 (1958). Section 1(2) of the Act, 65 P.S. § 66.1, defines the term "public record" as follows:

Any account, voucher or contract dealing with receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" [1] shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; [2] it shall not include any record, document, material, exhibit, pleading, report, memorandum or any paper,

access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, [3] or which would operate to the prejudice or impairment of a person's reputation or personal security, [4] or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State municipal authorities Federal funds, excepting therefrom however the record of any conviction for any criminal act.

Section 1(2) of the Act states, *inter alia,* that "*any minute, order or decision by an agency fixing* the personal property rights, privileges, immunities, *duties or obligations of any person or group of persons,*" falls within the definition of public record. (Emphasis added.) Section 1(2) has been broadly construed to require only some form of action by an agency that has an effect on someone. *Pastore v. Insurance Department,* 125 Pa.Commonwealth Ct. 611, 558 A.2d 909 (1989). In *Lamolinara v. Barger,* 30 Pa.Commonwealth Ct. 307, 311, 373 A.2d 788, 790 (1977), we wrote:

[W]e do not read the term "fixing" to require the affirmative establishment or creation of rights, privileges, immunities, duties or obligations. Although such a narrow construction would be quite possible, we believe it in keeping with the spirit and intent of the Right–To–Know Law to construe "public record" to include decisions which establish, alter, abolish, or deny rights, privileges, immunities, duties or obligations; in short, decisions which affect them.

Gutman contends that he should be given access to all the records requested in his January 23, 1991 letter. In that letter, Gutman sought access to four classes of State Police regulations, directives, general orders and special orders: (1) statements of the responsibilities of the various bureaus and divisions; (2) the use of deadly force; (3) sobriety and drug checkpoints and drug interdiction programs; and (4) intelligence gathering and file keeping regarding political activity, subversive activity, and terrorism. Gutman argues that the documents he seeks constitute "orders" or "decisions" and are, thus, discoverable public records.

■ Here, the regulations and policy statements sought by Gutman affect the State Police by establishing the duties and obligations of its personnel. In our view, therefore, the regulations and policy statements which are promulgated by the State Police are decisions of that agency fixing the duties and obligations of that police force. Thus, we conclude that all the documents requested by Gutman are public records within the definition in Section 1(2) of the Act.

■ Because the documents requested by Gutman are public records, we must now determine whether those documents must be excluded from discovery under the exceptions under Section 1(2) of the Act. *Pastore.* Gutman's request for regulations concerning the responsibilities of the various State Police bureaus and divisions and for regulations concerning the use of deadly force, are not within the scope of any of the exceptions to the Act; hence, we hold that the State Police erred in denying him access to these documents.[3]

■ On the other hand, Gutman may not have access to any documents concerning sobriety and drug checkpoints and drug interdiction, or documents concerning intelligence gathering regarding political activity, subversive activity and terrorism. We hold that these documents are within the scope of the exception excluding from discovery "communications ... which would disclose the institution, progress or result of an investigation undertaken by an agency [the State Police] in the performance of its official duties...." *See Sullivan v. City of Pittsburgh,* 127 Pa.Commonwealth Ct. 339, 561 A.2d 863 (1989), *petition for allowance of appeal denied,* 525 Pa. 591, 575 A.2d 120 (1990). Further, allowing individuals to discover such procedures and anticipate or discern drug and alcohol checkpoints could lead to tip-offs, thus endangering police personnel. Accordingly, discovery would also be pre-

---

**3.** The State Police argue that Gutman's request for documents concerning the use of deadly force fall within the investigation exception of Section 1(2). Gutman, however, is not seeking any documents concerning the use of deadly force in a particular incident. Instead, he wants information concerning general rules on the use of deadly force. Therefore, we conclude that the investigation exception does not apply here.

cluded by exception three. And, similar risk also exists with regard to police activities geared toward preventing terrorism and other related law enforcement problems.

Accordingly, the order of the State Police is reversed insofar as it denied Gutman access to regulations concerning the duties of the State Police bureaus and divisions, and general regulations concerning the use of deadly force. The order is affirmed insofar as it denied Gutman access to information concerning alcohol and drug checkpoints and interdiction programs, and intelligence reports on political activity, subversive activity, and terrorism.

## ORDER

NOW, June 22, 1992, the order of the Pennsylvania State Police in the above-captioned matter is reversed insofar as it denied Gutman access to regulations concerning the duties of the State Police bureaus and divisions, and general regulations concerning the use of deadly force. The order is affirmed insofar as it denied Gutman access to information concerning alcohol and drug checkpoints and interdiction programs, and intelligence reports on political activity, subversive activity and terrorism.

SMITH, Judge, concurring and dissenting.

I concur in the result reached by the Majority that Richard Gutman may not gain access to State Police departmental regulations, directives, and general and special orders concerning sobriety and drug checkpoints and interdiction programs, and intelligence gathering related to political and subversive activity and terrorism for the reason that Gutman has failed to demonstrate that these documents are subject to disclosure under the Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4, commonly referred to as the Pennsylvania Right–to–Know Act (Act). I dissent, however, from the Majority's determination that all other records requested by Gutman concerning statements of the responsibilities of various bureaus and divisions within the State Police

and use of deadly force constitute public records subject to disclosure.

A document must pass a two-part analysis to constitute a public record subject to disclosure. The Majority opinion, however, totally avoids this analysis in leaping to its generalization that the permitted documents are public records and should be disclosed to Gutman. A document must fall within the general statutory definition of a public record set forth in Section 1(2) of the Act, 65 P.S. § 66.1(2), and once determined to be a public record, an examination must be made as to whether the document falls within one of the enumerated exceptions to the statutory definition. *Pastore v. Insurance Department,* 125 Pa.Commonwealth Ct. 611, 558 A.2d 909 (1989). If included in one of the exceptions, the information is exempt from disclosure even though it may constitute a minute, order or decision fixing, among other things, personal or property rights or duties or obligations of any person or group of persons. *Id.*

Gutman contends that the requested documents represent rules of general applicability and statements of general policy which not only affect State Police personnel but also involve standards for intervention into the lives of private citizens. The State Police, to the contrary, contends that the requested documents are not "minutes, orders or decisions" by the agency which fix any rights, privileges, immunities, duties or obligations of any persons although they may do so at some future time, and that this conclusion is consistent with this Court's broad construction of what constitutes a public record and the fixing of rights or duties, citing *Marvel v. Dalrymple,* 38 Pa.Commonwealth Ct. 67, 393 A.2d 494 (1978) and *Lamolinara v. Barger,* 30 Pa.Commonwealth Ct. 307, 373 A.2d 788 (1977).

In *Marvel,* this Court stated that in determining the right to examine and inspect records under the Act, "[a] broad construction adheres, therefore, to an initial determination that a document is a 'public record', to be tempered as an opposing party brings into play the enumerated exceptions." *Id.,* 38 Pa.Commonwealth Ct. at 72, 393 A.2d at 497. Added to this

consideration is the construction given by this Court in *Lamolinara* of the term "fixing" of rights or duties as constituting some action which affects rather than creates rights, privileges, immunities, duties or obligations of any person or group of persons. Further, the term public record includes decisions which also "establish, alter, abolish or deny rights, privileges, immunities, duties or obligations." *Id.*, 30 Pa.Commonwealth Ct. at 309, 373 A.2d at 790.

Moreover, this Court observed in *West Shore School Dist. v. Homick*, 23 Pa.Commonwealth Ct. 615, 353 A.2d 93 (1976), that the words used in the statutory definition of a public record are used in the present tense and not in the speculativeness of some future occurrence and that a decision fixing rights or duties is not the same as developing information which may or may not be utilized at a future date to reach a decision affecting rights or duties.[1] *See City of Chester v. Getek*, 132 Pa.Commonwealth Ct. 394, 572 A.2d 1319 (1990) (documents found to constitute public records where they formed the basis for an agency decision). A fundamental step, therefore, in assessing Gutman's request for disclosure is whether he has shown that the requested documents played an integral part in formulating any particular decision by the State Police fixing rights, duties or obligations, a process completely overlooked by the Majority.

In *Consumer Education & Protective Ass'n v. Southeastern Pennsylvania Transportation Auth.*, 125 Pa.Commonwealth

---

1. In *West Shore*, a school teacher requested to inspect his personnel file and did not "assert that any of his property rights, privileges, immunities, duties or obligations [had] been affected by the contents of his personnel file." *Id.*, 23 Pa.Commonwealth Ct. at 619, 353 A.2d at 95. His concern was that the contents of the file could be used in some future proceeding or decision that may affect his rights or duties. This Court stated that the definition of public record must be considered in the present tense and that speculation about future action was insufficient to render the personnel file a public record. Further, the contents of a teacher's personnel file do not constitute a minute, order or decision of the board or fix rights, privileges, immunities, duties or obligations of the teacher.

Also *see Shapp v. Butera*, 22 Pa.Commonwealth Ct. 229, 348 A.2d 910 (1975) (disclosure of voluntarily submitted financial statements by certain government personnel pursuant to executive order denied as such statements did not meet definition of public record).

Ct. 143, 557 A.2d 1123 (1989), a transportation fare setting case, this Court stated that "if a report or document constitutes an essential component of an agency decision, it falls within the Act's definition of an agency decision and is, therefore, a public record." *Id.*, 125 Pa.Commonwealth Ct. at 153, 557 A.2d at 1127. CEPA was given access to documents that contained information relating to reports, studies or memoranda, which included actual data and calculations in making SEPTA's expense projections, as this information was an essential component of SEPTA's budget decisions for fiscal year 1987 on which public hearings were held to consider SEPTA's proposed operating budget and increase in fares. However, it was held that "CEPA would not be entitled to inspect internal memoranda or reports unless CEPA can demonstrate that such information was integral in formulating SEPTA's budget proposal." *Id.*, 125 Pa.Commonwealth Ct. at 154, 557 A.2d at 1127. CEPA was denied access to all internal memoranda establishing policy or practice for the settlement of claims, litigation, or confidential information prepared for litigation or negotiations to which SEPTA was a party or may become a party.

Nothing in the record in the case sub judice demonstrates that, on their face, State Police departmental regulations, directives, general orders and special orders concerning general responsibilities of the various bureaus and divisions or the use of deadly force may be categorized as a present "decision" by the State Police "fixing the personal or property rights, . . . duties or obligations of any person or group of persons" in which those rights, duties or obligations were in some present sense "affected" rather than "created." The Majority simply views the requested documents as decisions of the agency which fixes duties and obligations of the State Police without any consideration given to this Court's prior construction of the term "fixing." *See Lamolinara.* Similarly, Gutman's request does not indicate entry of an "order" by the State Police "fixing" among other things rights or duties of any person or group of persons. *West Shore.* (There is no dispute that none of the requested documents constitute a "minute" of any meeting where official action was taken by the

State Police.) Significantly, Gutman has never asserted in this record that any of the documents sought represented orders or decisions which affected his or any other persons' rights or duties.

Consistent with *Consumer Education,* disclosure should be prohibited where the documents do not meet the statutory definition of a public record, giving due regard to the broadest construction of that term. Hence, unless Gutman can demonstrate, which he has failed to do, that the documents allowed by the Majority were integral in formulating some decision by the State Police which affects Gutman or any other person or group of persons, they do not constitute "public records" subject to his examination and inspection. That is not to say that Gutman could not at some future time gain access to State Police documents, including some or all of those denied by the Majority, upon a showing that they meet the statutory definition for public record and subject to disclosure.

In *Vartan v. Department of General Services,* 121 Pa.Commonwealth Ct. 470, 477, 550 A.2d 1375, 1378 (1988), this Court stated that the broad construction accorded the term public record is not without limitation and "we do not believe that a requestor need merely allege the possibility that information had some impact on an agency decision." Accordingly, since this Court's scope of review is limited to determining whether the State Police had just and proper cause to deny Gutman's request for information, *Aamodt v. Department of Health,* 94 Pa.Commonwealth Ct. 54, 502 A.2d 776 (1986), the denial should be affirmed as it is apparent that the State Police's decision was for just and proper cause.

PELLEGRINI, J., joins in this dissent.