Francis E. WEAVER, Petitioner,

v.

DEPARTMENT OF CORRECTIONS, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 11, 1997.

Decided Aug. 13, 1997.

Publication Ordered Nov. 18, 1997.

---

Francis E. Weaver, petitioner, for himself.

Victoria S. Freimuth, Asst. Counsel, Camp Hill, for respondent.

Before PELLEGRINI and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

PELLEGRINI, Judge.

Francis E. Weaver (Weaver) petitions for review of a decision of the Department of Corrections (Department) denying his request for access to the Pennsylvania Additive Classification Tool Manual under the Right–to–Know Act (Act), Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§ 66.1–66.4.

■ Weaver is presently an inmate at the State Correctional Institution Retreat in Hunlock Creek, Pennsylvania. He filed requests at the institutional level and with the Commissioner of Corrections, Martin F. Horn, requesting that the Department allow him "to see, inspect, peruse and/or copy the Department of Corrections, Pennsylvania Additive Classification Tool (PACT) Manual." The PACT Manual is utilized by Department treatment staff in determining the level of custody of each inmate, which, in turn, dictates an inmate's housing status. Weaver's requests were denied and he then filed this appeal.[1]

Weaver contends that the Department erred in refusing his Right–to–Know Act request because the PACT Manual is a public record as defined by the Act because it affects a decision on how he is "housed" which affects the employment, educational and recreational opportunities that he has while incarcerated.

■ The Right–to–Know Act provides the right of access to an agency's public records to every citizen of Pennsylvania. Section 2 of that Act provides that "Every public record of any agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. § 66.2. A document is a "public record" if it is:

> Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use of disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons
> . . .

Section 1(2) of the Act, 65 P.S. § 66.1(2).[2]

■ The Department argues that the PACT Manual is not a public record because it does not fix Weaver's personal or property rights because he has none regarding "housing" decisions. *Wilder v. Department of Corrections,* 673 A.2d 30 (Pa.Cmwlth.1996). While indeed, Weaver has no right to any particular type of "housing", Weaver's right or lack of right is not alone determinative. Under the Right–to–Know Act, the right to examine a public record is not based on whether the person requesting the disclosure is affected by the records or if his or her motives are not pure in seeking them, but whether *any* person's rights are fixed. *Tribune–Review Publishing Company; Marvel v. Dalrymple,* 38 Pa.Cmwlth. 67, 393 A.2d 494, 497 (1978).

In *Gutman v. Pennsylvania State Police,* 148 Pa.Cmwlth. 567, 612 A.2d 553 (1992), *petition for allowance of appeal denied,* 533

---

1. Our scope of review of a decision under the Right–to–Know Act is limited to a determination of whether the grant or denial of an appellant's request for information was for just and proper cause. Section 4 of the Act, 65 P.S. § 66.4; *City of Chester v. Getek,* 132 Pa.Cmwlth. 394, 572 A.2d 1319 (1990).

2. A broad construction is given the initial determination of whether a document is a public record, with that construction tempered by the enumerated exceptions of the Act. *Tribune–Review Publishing Co. v. Allegheny County Housing Authority,* 662 A.2d 677, 682 (Pa.Cmwlth.1995).

Pa. 638, 621 A.2d 583 (1993), a citizen requested any regulation, directive, general or special order of the State Police covering the use of deadly force, documents relating to drug and sobriety checkpoints, along with other types of information, contended that they constituted orders or decisions of the State Police under Section 1(2) of the Act. We noted that Section 1(2) of the Act had been broadly construed so as to require "only some form of action by an agency that has an effect on someone", *Pastore v. Commonwealth, Insurance Department,* 125 Pa. Cmwlth. 611, 558 A.2d 909 (1989) and, quoting from *Lamolinara v. Barger,* 30 Pa. Cmwlth. 307, 373 A.2d 788, 790 (1977), we stated:

> [W]e do not read the term "fixing" to require the affirmative establishment or creation of rights, privileges, immunities, duties or obligations. Although such a narrow construction would be quite possible, we believe it in keeping with the spirit and intent of the Right–To–Know Law to construe "public record" to include decisions which establish, alter, abolish, or deny rights, privileges, immunities, duties or obligations; in short, decisions which affect them.

*Id.,* 612 A.2d at 555–56.

With that in mind, we went on to hold that the regulations and policy statements sought by Gutman fell within the general term of public records as defined in Section 1(2) of the Act, not because he might be impacted, but because they were decisions of the State Police fixing the duties and obligations of that police force in exercising deadly force. Following *Gutman,* in *Owens v. Horn,* 684 A.2d 208 (Pa.Cmwlth.1996), we held that the Department's Code of Ethics was a public record because it determined the responsibilities of how Department personnel were to act not because of any right of any prisoner to be treated in a certain way.

■ Accordingly, because it fixes the duties and obligations of the Department's treatment of personnel on how they evaluate the level of custody appropriate for inmates, the PACT Manual is a public record within the general meaning of that term as used in Section 1(2) of the Act.

Even if the PACT Manual falls within the general definition of a public record, the Department contends that Weaver's request is not for a public record because it would disclose the progress of an investigation or would prejudice anyone's personal security. Excluded from the general definition of "public record" contained in subsections (1) and (3) of the Act, 65 P.S. § 66.1(1) and (3), are:

> [1] ... any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; ... [3] or which would operate to the prejudice or impairment of a person's reputation or personal security....

It contends that the PACT Manual is used as an investigatory tool to assess inmates for housing, and to allow them access will allow them to manipulate that assessment, causing an inappropriate housing decision for an inmate. An inappropriate housing decision, it argues, could then be made that could endanger the inmate, other inmates or staff.

In *Gutman,* after we determined that certain documents were public records within the general meaning of the term, we nonetheless denied access to documents concerning sobriety and drug checkpoints and drug interdiction. While within the general definition, we held that those documents were excluded because they would "disclose the institution, progress or result of an investigation undertaken by the State Police in the performance of its official duties ..." We also went on to hold that allowing individuals to discover such procedures and anticipate or discern drug and alcohol checkpoints could lead to tip-offs, thus endangering police personnel. We believe that the reasoning applies here.

■ The PACT Manual is an assessment tool used by treatment staff; it tells how they are to do their investigation on the most critical decision regarding a prisoner—what level of custody is appropriate regarding an assessment of the individual, including the level of danger posed by or to the inmate or

the prison staff. As the Department points out, once an inmate knows of the criteria that went into making that determination, the inmate could manipulate the decision. Just as we gave a broad definition of what is a "public record" in *Lamolinara* so that the public would have a broad access to record, we have correspondingly not limited investigation exception to traditional investigative files involving a particular incident, nor have we limited the personal security exception to when an identifiable individual is at risk. In *Gutman*, we held that documents relating to the establishment of sobriety and drug checkpoints were excluded from the definition of public record because it would disclose investigatory techniques. We believe the same rational applies to the PACT Manual that establishes, in effect, how an inmate is investigated, reassessed and provides "checkpoints" on how prisoners are to be housed.[3] Accordingly, because the document requested is excluded from the general definition of what is a public record, the decision of the Department denying Weaver's access to the PACT Manual is affirmed.

### ORDER

AND NOW, this 13th day of August, 1997, the order of the Department of Corrections is affirmed.

---

**3.** The Department also contends that the PACT Manual is not located at the institutional level but at the Department's central office at Camp Hill and, as such, has no obligation to provide an inmate a copy of the material. In *Owens*, we held that where documents were not at the institution where requested, there is no obligation to have them delivered to the institution or to make copies under the Act.