**John CARTER, Petitioner**

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 3, 2008.
Decided Dec. 9, 2008.

John Carter, petitioner, pro se.

Timothy A. Holmes, Asst. Counsel and Suzanne N. Hueston, Chief Counsel, Camp Hill, for respondent.

BEFORE: SMITH–RIBNER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

John Carter (Carter), *pro se,* petitions for review from a final determination is-

sued by the Department of Corrections (Department) in connection with Carter's request for documents under the law commonly referred to as the Right to Know Law (Law), Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9. We affirm.

Carter, an inmate at the State Correctional Institution at Smithfield (SCI–Smithfield) submitted a letter to the Right to Know Law Officer (RTKL Officer) with the Department, seeking the following documents for inspection:[1]

> *"Master Index"* of all *effective* Dept. of Corrections procedural policies, including but not limited to, Administrative Directives, Procedure Manuals, and Policy Statements. (This document does not contain any actual procedures and is only a list of titles).
> Please Mail to Address below:
> January 17, 2008
>> John Carter # dd1814 SCI–Smithfield P.O. Box 999 Huntingdon, PA 16652

(Record at 1.) (Emphasis in original.)

On February 4, 2008, the RTKL Officer issued a letter to Carter which stated that "[y]our request for the Master Index of policies is granted. Specifically, you are granted access to the Master Policy Index." (Record at 2.) The letter further informed Carter that he or his representative could inspect the records "at the RTKL Office at the Department's Central Office." *Id.* Carter was also advised that a copy of the documents could be mailed to him for a cost of $4.46.

Carter thereafter filed exceptions to the decision. He claimed that he could not inspect the records at the RTKL Office at the Department's Central Office and that the requested records should be made available to him at SCI–Smithfield. He also took exception to the $4.46 fee for duplication of the records, maintaining that he did not seek duplication of the records but access thereto.

■ The Department's Exceptions Officer thereafter issued a final determination. Therein, the Exceptions Officer concluded that the filing of exceptions was not proper, inasmuch as exceptions are only proper when access is denied to documents and here, access was granted to Carter. Additionally, the Exceptions Officer determined that the requested documents were available for Carter's review at the Department's Central Office and that Carter was not entitled to the greater access he demanded by having the documents available at SCI–Smithfield for inspection. This appeal followed.[2]

Initially, we address the Department's contention that because the RTKL Officer granted Carter access to the Master Policy Index, the filing of exceptions was improper because, in accordance with Section 3.5(a) of the Law, *added by* the Act of June 29, 2002, P.L. 663, 65 P.S. § 66.3–5, it is only when "access is denied or deemed denied, [that] the requester may file exceptions."

■ Part of Carter's argument, however, is that access to the requested records

---

1. Section 2(c) of the Law provides that "a written request shall be addressed to the agency head or other person designated in the rules established by the agency." 65 P.S. § 66.2(c). The Department has designated a RTKL Officer for the purpose of considering requests for public records in its custody.

2. Our review of a decision under the Law is limited to a determination of whether the grant or denial of an individual's request for information was for just and proper cause. *Weaver v. Department of Corrections,* 702 A.2d 370 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 553 Pa. 685, 717 A.2d 536 (1998).

was conditional. Namely, he maintains that the RTKL Officer "conditioned its grant of access for inspection on the grounds petitioner [Carter] agreed to pay fees of $4.46 for photocopying and mailing." (Carter's brief at p. 7.) Thus, exceptions were proper, as the purported conditional access amounted to a denial.

We disagree with Carter's argument, however, that his grant of access to inspect the requested documents was in fact conditioned upon his paying $4.46. The RTKL Officer specifically advised Carter that he, or his representative, could inspect the records "at the RTKL Office at the Department's Central Office." (Record at 2.) Additionally, he was informed that a copy of the documents could be mailed to him for $4.46, the cost of duplicating twenty-one pages at fifteen cents per page plus $1.31 for mailing. Thus, the RTKL Officer made the records accessible for both inspection and duplication, as is required by Section 2 of the Law, 65 P.S. § 66.2, which provides that "a public record shall be accessible for inspection and duplication. . . ." The grant of access to inspect the records was not conditioned upon payment of $4.46. Rather, Carter, or his representative, could view the documents at the Department's Central Office. However, if duplication of the material was requested, the cost of $4.46 would be imposed.

■ Next, Carter argues that Section 2 of the Law, 65 P.S. § 66.2, mandates that public records be "accessible". Here, because Carter is incarcerated, he is unable to view the records at the Department's Central Office and he therefore maintains that the Department is obligated to provide him an opportunity to review the records at a location that is accessible to him, namely SCI–Smithfield. We disagree.

In accordance with Section 2 of the Law, "[p]ublic records shall be available for ac-

cess during the regular business hours of an agency." Here, the RTKL Officer informed Carter that the documents he sought could be viewed at the RTKL Office at the Department's Central Office. The Department has done all that it is required to do, it has made the records available for access.

In *Owens v. Horn*, 684 A.2d 208 (Pa. Cmwlth.1996), Owens, a prisoner, sought documents from the Department. The Department argued that the documents requested were not public records and that even if they were, the Department was not required to bring a copy of them to Owens or to make a copy for him.

This court concluded that the documents sought by Owens constituted a public record. However, this court agreed with the Department that it was not required to furnish him copies of the documents. "The Department is not required to furnish anyone with access to a public record by transporting the record or a copy to the individual, but only to make the record available for examination and inspection. . . ." *Id.* 684 A.2d at 210. This court further stated that, "[j]ust because Owens is an inmate and unable to travel to examine public records does not give him greater rights than that of other citizens." *Id.* at 210. Such rationale was the same as that expressed in *Nanayakkara v. Casella*, 681 A.2d 857 (Pa.Cmwlth.1996), wherein this court stated that a prisoner seeking access to his inmate records under the Law is not granted any special access merely because he is the subject of the records. Rather, his right to the records is the same as any Pennsylvania citizen.

■ We note that at the time of *Owens* and *Nanayakkara*, Section 2 of the Law then provided that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by

any citizen of the Commonwealth of Pennsylvania" Presently, Section 2 of the Law states that "[u]nless otherwise provided by law, a public record shall be accessible for inspection and duplication by a requester." Although the language of Section 2 of the Law has changed, the end result has not. Namely, all individuals seeking documents have the same rights and prisoners are not given any greater rights than that of other citizens in inspecting documents.

Moreover, contrary to Carter's assertion, the Management Directives (M.D.) issued by the Commonwealth of Pennsylvania Governor's Office do not mandate that the requested public records be accessible at a location which is accessible to an incarcerated individual. Specifically, M.D. 205.36.5.c. addresses the creation of a public records access room or, in the alternative, locations where records may be made available. That section provides in pertinent part:

    **c. Public Records Access Room**
The function of a public records access room shall be to provide a specific, established site where residents of the Commonwealth can have physical access to some or all of the agency's public records. If an agency elects not to establish such a room, the agency's RTKL official shall determine on an ad hoc basis the building and room where records will be made available to a requester and the hours of availability.

Here, the RTKL Officer informed Carter that the documents he sought could be viewed at the RTKL Office at the Department's Central Office. Carter's incarceration and thus inability to access the document at the given location, is of no moment. Carter still had the option of sending a representative to view the documents or to pay to have the documents duplicated and mailed to him. The Department made the documents accessible for inspection and duplication as is required by the Law.

In accordance with the above, the final determination issued by the Department is affirmed.

## *O R D E R*

Now, December 9, 2008, the final determination issued by the Department of Corrections, in the above-captioned matter, is affirmed.