Lennox L. Moak and Bernard B. Eiss, Appellants,
*v.* Philadelphia Newspapers, Inc. and Aaron
Epstein, Appellees.

600

Argued April 1, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*John M. McNally, Jr.*, First Deputy City Solicitor, with him *Martin Weinberg*, City Solicitor, for appellants.

*David H. Marion*, with him *Samuel E. Klein*, and *Harold E. Kohn, P.A.*, for appellees.

OPINION BY JUDGE ROGERS, April 30, 1975:

On March 11, 1974, after eighteen months of investigation, the Pennsylvania Crime Commission issued a report alleging ongoing, widespread and systematic corruption of all levels of the Philadelphia Police Department. The report made specific reference to about 400 members of Philadelphia's police force as having been involved in corrupt and improper conduct,[1] identifying these persons only by rank, first name, last initial and badge or payroll number. On March 12, 1974, Aaron

---

1. As correctly noted by appellants, the Crime Commission's duties are investigative and reportive not accusatory or prosecutorial. *Pennsylvania Crime Commission v. Nacrelli*, 5 Pa. Commonwealth Ct. 551, A.2d (1972).

Epstein, City Hall Bureau Chief for *The Philadelphia Inquirer*, made formal demand upon Bernard B. Eiss, the accounting manager of the city's Department of Finance, for access to the payroll records of the Philadelphia Police Department. These records contain each Police Department employee's full name, class and department, payroll number, sex, date of birth, annual salary and various other personnel data. The demand was refused.

Epstein and his employer, Philadelphia Newspapers, Inc., which owns the Inquirer, the appellees here, filed their complaint in equity seeking an order requiring the appellants, Bernard B. Eiss and Lennox L. Moak, the city's Finance Director, to provide access to the payroll records. The appellees claimed an absolute right of inspection under the "Right to Know Act," Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§66.1-66.4 (Act) and under Section 5-1104 of the Philadelphia Home Rule Charter, 351 Pa. Code §5.5-1104. The appellants, Eiss and Moak, filed their answer and the parties thereafter entered into a stipulation of the facts. Epstein and Philadelphia Newspapers, Inc. filed a motion for summary judgment in their favor which was granted by the court below. The appellants have appealed.

Section 2 of the "Right to Know Act," 65 P.S. §66.2, provides:

"Every public record of an agency shall, at reasonable times be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania."

Section 1(1), 65 P.S.§§66.1(1), defines agency as:

"[a]ny department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function."

And Section 1(2), *as amended,* 65 P.S. §66.1(2) (Supp. 1974-1975) pertinently defines public record as:

"Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency . . . Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, . . . ."

Section 5-1104 of the Charter provides in pertinent part:

"City records, the disclosure of which would invade a person's right to privacy, hinder law enforcement, endanger public safety, or breach a legally recognized duty of confidence, or the nondisclosure of which is legally privileged, or which have been prepared for or by the Law Department for use in actions or proceedings to which the City is or may be a party, shall not be available for public inspection. Except as herein provided, all other City records shall be open for public inspection. . . ."

The parties have stipulated that the Department of Finance is an agency, that the payroll records are accounts related to the disbursement of funds, and that the payroll records were not prepared by or for the Law Department of the City.

The appellants contend that the payroll records would operate to the prejudice or impairment of the policemen's

reputations and that they are therefore excluded by the "Right to Know Act" from the class of public records which are subject to examination and inspection. The court below, by a thoughtful and comprehensive opinion of Judge SPORKIN, rejected this argument and ordered the appellants to grant the appellees access to the records. We agree and affirm.

The appellants contend that possession of the payroll records will enable the appellees to ascertain the full names and other information concerning the approximately 400 policemen, only partially identified by the Crime Commission, which information, if published in the *Inquirer*, will prejudice and impair the policemen's reputation.[2] They argue that it is our duty to determine, not simply whether the payroll records are harmful to the reputations of the policemen, which of course they are not, but whether the payroll records may be used in combination with the Crime Commission Report in a fashion which would impair the policemen's reputations. We find nothing in the Act supporting this theory and there are substantial reasons and authority for a contrary conclusion. The Act provides that every public record shall be open for examination and inspection. The payroll records here sought are conceded to be accounts dealing with the disbursement of funds, a category of document within the Act's definition of public records. The payroll records are not, in our opinion, records which themselves, in the words of the Act, "would operate to the prejudice or impairment of a person's reputation or personal security." As we pointed out in *Friedman v. Fumo*, 9 Pa. Commonwealth Ct. 609, 309 A.2d 75 (1973), where the public agency made the same argument advanced by the appel-

---

2. The plaintiffs do not aver in their complaint nor admit by stipulation that they will publish this information. The appellants contend that it is reasonable to assume that publication is intended because the appellees allege that the identity of the policemen is a matter of public interest concern.

lants, the Legislature, if it intended to except records intrinsically harmless but capable of being used with other materials in a manner harmful to reputation, would have chosen less restrictive phraseology than "would operate." In *Friedman* we ordered the Commissioner of Professional and Occupational Affairs of Pennsylvania to permit a citizen to inspect and copy the list of persons taking the examination for qualification as a certified public accountant and rejected the Commissioner's contention that the list was within the exception because the citizen intended to furnish it to clients who in turn might disclose the identities of persons who failed the examination to the detriment of their reputations. *See also Kegel v. Community College of Beaver County*, 55 D. & C. 2d 220 (1972), where the examination of payroll records was unsuccessfully resisted on the ground that their disclosure might impair the reputation of teachers who had not received salary increases pursuant to a merit system, and *Kanzelmeyer v. Eger*, 16 Pa. Commonwealth Ct. 495, 329 A. 2d 307 (1974), where this court directed inspection of employee attendance cards over the objection that disciplinary action might be recorded on these records.

Further, as Judge SPORKIN astutely observes, the acceptance of the appellants' contention that we must consider the possible ways in which facially harmless records might be employed so as to impair reputations, would create of the exception a shield against the Act's central objective to clarify "the right of examination and inspection of public records *by all citizens, regardless of their interest or the extent or nature thereof." Wiley v. Woods*, 393 Pa. 341, 350, 141 A. 2d 844, 849 (1958). (Emphasis supplied.)

The appellants rely heavily upon *McMullan v. Wohlgemuth*, 453 Pa. 147, 308 A. 2d 888 (1973). However, the denial of access to public assistance rolls by our Supreme Court in that case was based upon provisions of the Welfare Law and departmental regulations restricting

such access, which the court held brought the records within the "Right to Know Act's" exception of public records "access to or the publication of which is prohibited, restricted or forbidden by statute law." We are not unmindful that the majority of the Supreme Court declared that the exception relating to reputation also provided persuasive grounds for denying access to public assistance rolls.[3] Obviously, the identification of one as a police officer, a position of trust and honor, is quite different from the disclosure of one's dependence upon public assistance, considered by many to be a mark of extreme misfortune, and unhappily by some of incompetence.

We hold, therefore, that it is our duty under the Act to determine only whether the public records themselves would operate to the prejudice or impairment of reputation, not whether their use with other information might have such harmful consequence. Since the payroll records here sought are incapable of such harm they are not excepted from disclosure.

The appellees additionally claimed the right of examination and inspection of the payroll records pursuant to Section 5-1104 of the Philadelphia Home Rule Charter, reproduced earlier in this opinion. The appellants contend that the records came within that provision's exception for records the disclosure of which would invade privacy. The court below, we believe correctly, decided that the disclosure of one's identity as a city police officer was not an invasion of his privacy.

The parties did not raise below the effectiveness of the Charter provision in view of the "Right to Know Act." Home rule in Philadelphia is authorized by the First Class City Home Rule Act, Act of April 21, 1949, P.L. 665, *as amended,* 53 P.S. §13101 et seq., Section 18 (b) of which, 53 P.S. §13133 (b), forbids the exercise of powers con-

---

3. 453 Pa. at 160, n. 8, 308 A.2d at 895, n. 8.

trary to or in limitation or enlargement of powers granted by Acts of the General Assembly which are "applicable in every part of the Commonwealth." The provision has been interpreted to "concern only laws in relation to substantive matters of statewide concern, such as health, safety, security and general welfare of all the inhabitants of the State, and not to matters affecting merely the *personnel* and *administration* of the offices local to Philadelphia and which are of no concern to citizens elsewhere." (Emphasis in original.) *Lennox v. Clark,* 372 Pa. 355, 379, 93 A. 2d 834, 845 (1953). We believe that Section 2 of the "Right to Know Act," 65 P.S. §66.2, providing that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania" relates to a substantive matter of state concern and that the more restrictive limitations on the access to city records of Section 5-1104 of the Charter, including that relating to the right of privacy, are of no effect.

Order affirmed.