**George P. VARGO, Petitioner,**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 12, 1998.

Decided Aug. 4, 1998.

George P. Vargo, petitioner, pro se.

Robert M. Wolff, Camp Hill, for respondent.

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

George P. Vargo (Petitioner), acting *pro se*, petitions this Court to review a decision of the Pennsylvania Department of Corrections (Department) denying his request for documents made pursuant to the act commonly

referred to as the Pennsylvania Right to Know Act (Act).[1] Petitioner made this request as an inmate of the State Correctional Institution at Huntingdon, Pennsylvania. We affirm in part and reverse in part.

By letter dated October 1, 1997, Petitioner filed a request with the Department for inspection and reproduction of the following:

1. The current Visiting Regulations in effect at SCI–Huntingdon, and [the Department] policies relating to Visiting regulations, especially documents relating to the Termination of Visiting Privileges. [R]equested documents include but [are] not limited to the following: Scientific Drug Detection Equipment, namely the type or identification of Scientific Drug Detection Equipment being used and the qualification of personnel that are certified and licensed to operate Scientific Drug Detection Equipment and any other departmental policies, records, or other writings relating to the operation of Scientific Drug Detection Equipment. All documents, records and other writing relating to the accuracy of this particular Scientific Drug Detection Equipment. All Departmental policies and procedures that determine how strictly the procedures are used in the Operation of Scientific Drug Detection Equipment (i.e.[,] how often the equipment is calibrated and what monitoring system is used to insure accuracy), and all records indicating such.

2. The current Visiting Regulations in effect at SCI–Huntingdon, and [the Department] policies relating to Visiting Regulations, especially documents relating to the termination of Visiting Privileges. Requested documents include but [are] not limited to the following: Scientific Drug Detection Equipment (i.e.[,] ION Scanning Equipment), documenting the accuracy of said ION Scanning Equipment against false reading from Prescription Medications, Perfumes, Colognes, Other Cosmetics and Monies. All documents[,] policies and other writings pertaining to the

safeguarding readings from over the counter Medications and Prescription Medications.

Letter of Petitioner to Department, October 1, 1997, p. 1.[2]

By letter dated February 2, 1998, the Department granted the request in part and denied it in part. Specifically, the Department granted Petitioner permission to inspect and copy the SCI–Huntingdon written inmate visitation policy and the Department's written inmate visitation policy. The Department denied, however, any access to documents delineating the type of scientific drug detection equipment used by the Department, characterizing such documents as not being "public records" under the Act. The Department also denied Petitioner's request to inspect policies, records, and documents relating to the accuracy and calibration of drug detection equipment as well as documents regarding false readings and the qualification and training of personnel authorized to administer the drug detection equipment. The Department determined that the disclosure of these documents, if indeed any of them were public records for purposes of the Act, would threaten the personal security of individuals and were thus exempt from disclosure under the Act.

■ Petitioner thereupon filed this petition for review, seeking a reversal of the Department's decision to deny access to those documents precluded from inspection and copy. This Court's scope of review is to determine whether the Department had just and proper cause to deny Petitioner's full request. *Aamodt v. Department of Health,* 94 Pa.Cmwlth. 54, 502 A.2d 776 (1986).

■ Section 2 of the Act, 65 P.S. § 66.2, provides that "[e]very public record of an agency shall ... be open for examination and inspection by any citizen of the Commonwealth ...." Section 1(2) of the Act, 65 P.S. § 66.1(2), defines the term "public record" as follows:

---

1. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4.

2. Petitioner alleges in his brief that this request arose following the refusal by prison officials to permit a visit to Petitioner from a friend who tested positive for the presence of drugs on her person, allegedly by the machinery for which Petitioner seeks information.

[1] Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and [2] any minute, order or decision by an agency fixing the personal property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, [3] That the term 'public records' [a] shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; [b] it shall not include any record, document, material, exhibit, pleading, report, memorandum or any paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or [c] which would operate to the prejudice or impairment of a person's reputation or personal security, or [d] which would result in the loss by the Commonwealth or any of its political subdivisions ... of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

The reference in this rather lengthy definition to "any minute, order or decision by an agency fixing the personal property rights, privileges, immunities, duties or obligations of any person or group of persons" has been broadly interpreted to mean some form of action by an agency that has an effect on someone. *Gutman v. Pennsylvania State Police*, 148 Pa.Cmwlth. 567, 612 A.2d 553 (1992), *petition for allowance of appeal denied*, 533 Pa. 638, 621 A.2d 583 (1993). This is in keeping with the intent of the Act, which is, in part, to insure the availability of government information to citizens of the Commonwealth by permitting access to official information. *Tribune–Review Publishing Co. v. Allegheny County Housing Authority*, 662 A.2d 677 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, 546 Pa. 688, 686 A.2d 1315 (1996). Thus, a broad construction is given under the Act to the initial determination of whether a document is a public record, which may be countered by the opposing party's establishment of any of the stated exceptions set forth in Section 1(2) of the Act.

The Department argues that the information requested by Petitioner (aside from the information already made available to him) does not constitute public records under the Act. In making this argument, the Department contends that documents relating to the identity of scientific drug equipment used in screening visitors to the prison, as well as documents concerning the accuracy of this equipment and the qualifications of the personnel administering the equipment, do not constitute a "minute, order or decision" of the Department. The Department also contends that Petitioner would not be permitted access to such documents because he has no right to have visitors while an inmate at the prison. This argument is based upon language in Section 1(2) of the Act that the agency's "minute, order or decision" must fix the personal or property *rights* of a person or persons. Finally, the Department argues that even if the requested documents can be considered public records under the Act, they are exempt from disclosure because such disclosure would operate to the prejudice of the personal security of individuals.

■ Section 1(2) of the Act generally contemplates a two-step analysis. The first step requires a determination of whether the requested document falls *generally* within the definition of "public record." If it does, a determination of whether any of the stated exceptions to this general definition are applicable must be made. If the document falls under one of these exceptions, then the document is not a "public record" as defined by the Act. The Department argues *both* that the documents requested by Petitioner do not fall under the general definition of "public records" and that even if they do, one or more of the exceptions set forth in Section 1(2) of the Act apply to prohibit disclosure.

■ We disagree with the Department's argument that the requested documents do not fall under the general, or initial, definition of public records under the Act. We first observe that the Act is not limited to the disclosure of minutes, orders or decisions of

an agency. A public record may also be an "account, voucher, or contract dealing with the receipt or disbursement of funds by an agency." 65 P.S. § 66.1(2). The drug testing equipment used by the Department to screen visitors must necessarily have been purchased or otherwise acquired by the Department. Thus, an account, contract, or voucher of the Department that deals with the receipt or disbursement of funds (and which identifies such equipment) is, by definition of Section 1(2), a public record unless excepted for one of the listed reasons.

Further, the Department's argument that the requested documents are not public records or are not available to Petitioner because he has no constitutional right to have visitors is nowhere supported by the Act. A public record is, again, generally defined as a "minute, order or decision by an agency fixing the personal property rights, *privileges, immunities, duties or obligations* of *any* person or group of persons." 65 P.S. § 66.1(2) (emphasis added). The documents affect matters other than rights and are not dependent upon the requestor being directly affected by the decision of the agency. Again, we have construed this portion of Section 1(2) of the Act as meaning "*some form of action* by an agency that has an effect on *someone.*" *Gutman,* 612 A.2d at 555 (emphasis added).

We thus must first answer the question of whether the requested documents concerning the accuracy of the drug testing equipment, the training and qualifications of personnel administering the equipment, and data concerning false positive results from the equipment constitute some form of action by the Department affecting a person(s). Specifically, Petitioner's request concerns documents relating to the "qualification of personnel that are certified and licensed to operate" the drug screening equipment; "policies, records, or other writings relating to the operation" of the drug screening equipment; "documents, records and other writing relating to

the accuracy of" the drug detection equipment; "policies and procedures that determine ... how often the equipment is calibrated and what monitoring system is used to insure accuracy"; documents relating to the accuracy of ION scanning equipment "against false reading" from prescription medications, perfumes, colognes, other cosmetics, and money; and "documents and policies ... pertaining to the safeguarding [of] readings from over-the-counter" medications and prescription medications.[3]

In *Gutman,* we determined that regulations, directives, general orders, and special orders of the State Police concerning (1) the responsibilities of its bureaus and divisions; (2) the use of deadly force; (3) sobriety checkpoints and drug interdiction programs; and (4) intelligence gathering and file keeping regarding political activity, subversive activity, and terrorism are all generally public records under the Act. We found that these documents "affect the State Police by establishing the duties and obligations of its personnel." *Gutman,* 612 A.2d at 555.[4] In *Travaglia v. Department of Corrections,* 699 A.2d 1317 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 550 Pa. 713, 705 A.2d 1313 (1997), we determined that information concerning the details of the procedures the Department implements when executing persons by lethal injection and the method of selecting witnesses to executions, their identities, and their recorded impressions are public records clearly affecting the rights and interests of condemned persons and of society as a whole. These decisions follow the general principle that for a record to be public, it must derive from an act or decision of the agency that affects a person or group of persons.

With this authority in mind, it appears that the documents requested by Petitioner, as set forth above, fall within the general or initial definition of public record as an act or decision of an agency that affects a person or persons. Certainly, "policies" regarding the

---

3. The Department has not denied that these documents exist and are in its possession.

4. We later determined in *Gutman,* however, that information regarding sobriety checkpoints; drug interdiction programs; and intelligence

gathering and file keeping regarding political activity, subversive activity, and terrorism fell under the exclusions set forth in Section 1(2) of the Act and were thus not subject to disclosure.

operation of the drug screening equipment, the calibration and monitoring for accuracy of this equipment, and the methods taken to safeguard against false readings made by this equipment are decisions or acts of the Department that affect persons who come to visit inmates, the inmates themselves, and the security personnel at the prison. Documents concerning the regulation of the qualifications and training of staff who administer the drug equipment also concern decisions of the Department affecting the above-named persons. Data regarding the accuracy of the drug screening equipment may also be an act of the Department affecting persons when the Department determines that the equipment should be tested for accuracy. Clearly, this testing has an impact upon the inmates, their visitors, and the prison staff.

Thus, the records requested by Petitioner to which he was denied access fall under the general definition of public records under the Act. To summarize, these documents include the identity of the drug screening equipment used in the prisons for visitors (as set forth in any account, contract, or voucher of the Department), policies regarding the operation of the equipment, policies regarding the accuracy of the equipment and data concerning the accuracy of the equipment, and policies regarding the qualifications of the personnel who use the equipment. Our next level of inquiry, however, is to determine whether these records fall within any of the exemptions set forth in Section 1(2) of the Act, thus foreclosing disclosure. *See Gutman; Travaglia.*

The Department argues that the release of the information Petitioner seeks will jeopardize the safety and security of prison employees and inmates. This argument is based upon the supposition that the release of information concerning the manner by which the drug detection equipment is operated to detect the presence of drugs upon visitors to the prison could lead to methods used to evade drug detection. The Department further contends that the introduction of drugs into the prison could result in violence and other harm to persons.

This argument has merit. In *Gutman,* we affirmed the denial of a request of State

Police documents relating to the operation of drug checkpoints and interdiction programs. We stated that to allow "individuals to discover such procedures and anticipate or discern drug and alcohol checkpoints could lead to tip-offs, thus endangering police personnel. Accordingly, the discovery [of these records] would ... be precluded" under the exception to Section 1(2) relating to personal security risks that arise from the release of information. *Gutman,* 612 A.2d at 556. *See also Travaglia* (disclosure of detailed information regarding the specific lethal drugs used in executions could result in an endangerment to persons and attempts to foil the execution process by inmates).

Similarly, the discovery in this case of the methods by which the Department's drug screening equipment detects drugs and is calibrated for the detection of drugs could lead to dangerous consequences for prison personnel and inmates. Such information is therefore exempt from disclosure under Section 1(2) of the Act and is not encompassed under the Act's definition of "public records."

Also, Section 1(2) of the Act exempts from disclosure any document, which would reveal the institution, progress, or result of an investigation made by an agency in the course of its official duties. Here, the disclosure of information regarding the operation of drug screening equipment could seriously interfere with the duties of the Department with respect to the introduction of drugs into its prisons. We reached a similar result in *Gutman,* where we determined that the disclosure of information regarding drug and alcohol checkpoints and interdiction programs and intelligence gathering concerning certain activity would implicate this exception under Section 1(2) of the Act.

■ Accordingly, it was just and proper for the Department to refuse to allow inspection and copy of its documents pertaining to (1) the identity of the drug detection equipment, (2) the operation of this equipment, (3) the equipment's calibration, (4) the Department's tests for accuracy, and (5) the Department's policies relating to these matters. The disclosure of this information could lead to deleterious results that would outweigh any public benefits that could arise from its

disclosure. *See Travaglia.* Thus, the requested documents relating to this information are not public records as defined by the Act.

 We cannot say, however, how the disclosure of the Department's policies relating to the qualifications of personnel who use the equipment would operate to the prejudice or impairment of the personal security of individuals or would disclose the institution, progress, or result of an investigation undertaken by the Department. This information is analogous to the information we determined was subject to disclosure in *Gutman* concerning the State Police's responsibilities for its bureaus and divisions. Of course, if any information regarding the qualifications of the personnel who administer the drug detection equipment would fall under any of the exceptions to Section 1(2) of the Act, the Department may redact the information and disclose the information thus redacted. This selective disclosure comports with the Act. *Travaglia.*

We therefore hold that the decision of the Department is affirmed insofar as it precluded access to information regarding the drug detection equipment and its operation, calibration, and accuracy. This information does not fall within the definition of public records in the Act. The decision of the Department is reversed, however, with respect to its refusal to disclose information concerning its policies regarding the qualifications of personnel who administer the drug detection equipment. The Department shall make this information available to Petitioner for inspection and copy. An appropriate order will be accordingly entered.

### ORDER

AND NOW, this 4th day of August, 1998, the decision of the Department of Corrections (the Department) in the above-captioned matter is hereby reversed insofar as it denied George P. Vargo access to the Department's policies regarding the qualifications of personnel who administer drug detection or screening equipment in the state prisons. This matter is remanded to the Department with direction that it provide to George P. Vargo access to the Department's

records relating to this matter. The decision of the Department is affirmed in all other respects.

Jurisdiction relinquished.

DOYLE, J., concurs in the result only.