The **PENNSYLVANIA STATE UNIVERSITY, Richard Althouse, Rodney A. Erickson, Joseph V. Paterno, and Gary C. Schultz, Petitioners**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 4, 2005.
Decided Aug. 12, 2005.

John A. Snyder, State College, for petitioner, Pennsylvania State University.

Brian E. McDonough, Harrisburg, for respondent, State Employees' Retirement Board.

Craig J. Staudenmaier, for intervenor, Patriot–News Co.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge McGINLEY.

This is an appeal from the order of the State Employees' Retirement Board (Board) which granted a Right to Know Act [1] (RTKA) request made by *The Patri-*

---

1. Act of June 21, 1957, P.L. 390, *as amended* 65 P.S. § 66.1– § 66.9, is commonly referred to as the Right to Know Act.

ot–*News Company* (*Patriot–News* ) and its journalist Jan Murphy (Murphy).

On December 19, 2002, Murphy, a reporter for *Patriot–News,* requested, *via* email, documents revealing the years of credited service, current salary, and salary history for certain members of the State Employees' Retirement System (SERS) employed by The Pennsylvania State University (PSU), including: (1) Richard Althouse, University Budget Officer; (2) Rodney Erickson, Executive Vice President and Provost; (3) Gary Schultz, Senior Vice President of Finance and Business/Treasurer; and (4) Joseph Paterno, Professor of Physical Education and Head Football Coach (hereinafter referred to as "Employees"). Murphy specifically stated that her request did not include "Social Security numbers, home addresses or telephone numbers." E–Mail from Jan Murphy to Director of Communications, Sean Sanderson, December 19, 2002, at 1.

Before responding, SERS notified PSU of the RTKA request. Through its counsel, PSU communicated its opposition. Employees and PSU claimed the salary information was private information that could not be disclosed without violating Employees' constitutionally protected rights of privacy. Employees and PSU claimed the request was simply a means to obtain, through the "back door" from SERS, information that they could not obtain directly from PSU.

On March 19, 2003, the Board issued a Rule to Show Cause and ordered SERS to participate in the proceeding to assist in ensuring an adequate record. SERS pointed out that Public Information Policies (PIPS) adopted by the Board did not address a situation where active employees of PSU, a non-state agency which is not subject to the RTKA, contested the release of their service and salary information from SERS. According to SERS, the PIPS merely contemplated the release of salary and service histories from members employed by state agencies and did not address the specific nuances of the current situation involving PSU (a non-state agency) which had never been litigated before the Board.

On October 22, 2003, a hearing examiner conducted a hearing on Employees' objections to the RTKA request. Testimony and exhibits were presented by the parties. The parties jointly stipulated to the following pertinent facts:

3. [PSU] is a state-related institution of higher education ...

* * *

11. [Murphy] is ... a reporter for the Patriot–News Company and is a citizen of the Commonwealth of Pennsylvania.

12. Patriot–News Company is the Publisher of the Patriot News and the Sunday Patriot News, both newspapers of general circulation in central Pennsylvania. The newspapers routinely contain articles addressing the workings of state agencies and, in particular, their use of state tax revenues.

13. SERS is the state agency responsible for administering the State Employees Retirement Code ("Retirement Code"), 71 Pa.C.S. §§ 5101–5956, which is a defined benefit plan for state employees.[2]

14. In accordance with the provisions of the Retirement Code, 71 Pa.C.S. §§ 5101 *et seq.,* and by special legislation amending that statute, employees of [PSU] are eligible, but not required, to

**2.** In a "defined benefit plan" the employer promises a particular benefit calculated by a defined formula which is paid at retirement.

participate in the retirement plan administered and operated by SERS.

15. Over 6,400 [PSU] employees participate in the SERS retirement plan.

16. Currently, [PSU] employees make a selection as between SERS and/or TIAA–CREF shortly after they are hired.

* * *

20. On a regular basis, [PSU] is required to furnish to SERS information that [PSU] believes is private and confidential and that [PSU] treats as private and confidential, including the retirement-covered "compensation", as that phrase is defined in 71 Pa.C.S. § 5102, of its participating employees, for the purpose of establishing and administering the employees' retirement accounts with SERS.

21. Retirement covered "compensation" is closely related to salary information and is a type of personal financial information that [PSU] believes is, and treats as confidential.

22. The information provided by [PSU] to SERS is provided for the purpose of allowing the SERS Board to fulfill its statutory duties to its members, including the PSU Employee Respondents herein.

* * *

24. On both a bi-weekly and a monthly basis, a magnetic computer tape is prepared by [PSU].

25. SERS issues to various reporting agencies and institutions, including [PSU] a document known as the "State Employees' Retirement System Magnetic/Electronic Media Reporting Instructions for Transmission of Member's Data" ("Magnetic/Electronic Reporting Instructions").

26. The Magnetic/Electronic Reporting Instructions mandate specific data fields that are to be included by the reporting entity for the participating employees, as well as a description of the format in which the data should be transmitted.

27. The data fields transmitted by [PSU] to SERS on a bi-weekly and monthly basis include the employee's name, social security number, address, monthly/bi weekly compensation, hours worked, amount of retirement contribution deducted, county of residence, and retirement class.

* * *

29. On a bi-weekly basis, a check is drafted and transmitted to SERS as payment for that period's employee contributions.

30. [PSU's] employer contributions are paid quarterly to SERS following the receipt of an invoice from SERS requesting same. Like the employee contributions, the employer contributions are paid via a paper check which is transmitted by [PSU] to SERS.

* * *

38. SERS treats requests for "salary information" as if they are requests for retirement-covered "compensation."

* * *

48. In the ordinary course of business, SERS and the PSU Employee Respondents have communicated regarding their accounts. These communications typically include correspondence, account statements and other membership materials . . .

* * *

57. SERS invests the employer and employee contributions.

* * *

66. At the time of Murphy's request [Employees] were all "active members" of SERS.

67. At the time of Murphy's request, SERS had in its possession the informa-

tion requested, that is, salary information and years of credited service, in a form which could have been provided . . .

75. SERS maintains records of its members' compensation, both current and historic, and years of credited service.

76. SERS provides annually to its members a statement of account showing compensation information, years of credited service and the projected retirement benefit. The information regarding years of credited service and compensation information is provided to calculate a projected retirement benefit. The projected retirement benefit is an estimate that is subject to change.

77. The information employed by SERS in providing active members with their annual Account Statements . . . is among other things, as follows: the member's age, years of credited service and salary history.

\* \* \*

84. In the defined benefit plan, SERS' members receive statutorily defined benefits that are guaranteed by the state, pursuant to a statutory formula.

Stipulation, October 15, 2003, at 2–13.

On May 10, 2004, the SERS hearing examiner issued his recommendation that the RTKA request be granted because the information requested was a public record to which no exception applied and for which no law barred disclosure. PSU and Employees filed exceptions. On November 16, 2004, the Board denied the exceptions and granted the RTKA request. The Board concluded that the compensation and service credit information requested by *Patriot–News* and Murphy was an "ac-

count voucher or contract dealing with the receipt or disbursement of funds by SERS" and that Employees did not have a privacy right in their compensation information sufficient to defeat a request for those SERS records under the RTKA. Board Opinion, November 16, 2004, at 28.

■ PSU and Employees appealed the decision of the Board by filing a Petition for Review in this Court. There are two issues presented:[3] (1) whether the salary and earnings information requested by *Patriot–News* and Murphy is a "public record" under the RTKA, and if so, (2) whether the information is protected from disclosure under the "personal security" and "restricted information" exceptions under the RTKA?

### 1. *The Right to Know Act*

Section 2(a) of the RTKA provides that "a public record shall be accessible for inspection and duplication by a requester in accordance with this act. . . . Public records shall be available for access during the regular business hours of an agency. Nothing in this act shall provide for access to a record which is not a public record." 65 P.S. § 66.2(a).

Section 1 of the RTKA defines "public record" as "[a]ny account, voucher or contract dealing with the receipt or disbursement of funds by an agency . . . and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons." 65 P.S. § 66.1. Excluded from the RTKA's definition of "public record", in relevant part, is "any record, document . . . which is restricted . . . which would

3. This Court's review in a RTKA case is limited to whether an error of law was committed, constitutional rights were violated or whether necessary findings of fact are supported by

substantial evidence. *Goppelt v. City of Philadelphia Revenue Department*, 841 A.2d 599 (Pa.Cmwlth.2004).

operate to the prejudice or impairment of a person's reputation or personal security. . . ." 65 P.S. § 66.1.

■ The intent of the RTKA is to allow any individual or entity access to public records to discover information about the workings of the government. *Current Status, Inc. v. Hykel,* 778 A.2d 781 (Pa.Cmwlth.2001); *Arduino v. Borough of Dunmore,* 720 A.2d 827, 830 (Pa. Cmwlth.1998). The RTKA thus is designed to permit the scrutiny of the acts of public officials and to make them accountable for their use of public funds. *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth.1995).

■ In RTKA cases, the requester's motives for seeking disclosure are irrelevant, *Current Status, Inc. v. Hykel,* and "a citizen may not be denied access to public records because of lack of [personal] interest or for a lack of a 'legitimate' purpose." *Envirotest Partners,* 664 A.2d at 212. In fact, a requester need not provide any reason for demanding to inspect a public record. Section 2 of the RTKA expressly states: "A written request need not include any explanation of the requester's reason for requesting or intended use of the records." 65 P.S. § 66.2.

■ A party which asserts a right to disclosure of documents pursuant to the RTKA must establish that the requested documents were generated or kept by an agency[4] and that they constitute "public records." *Safety, Agriculture, Villages and Environment, Inc. v. Delaware Valley Regional Planning Commission,* 819 A.2d 1235 (Pa.Cmwlth.2003). The fact that a record is merely in the possession of an agency does not create the presumption that the record is a "public record" subject to disclosure. Rather, the party seeking access bears the burden of establishing that the requested material bears the characteristics of a public record. *LaValle v. Office of General Counsel,* 564 Pa. 482, 769 A.2d 449 (2001).

### A. Whether Employees' Salaries Constitute "Public Records"

■ The RTKA generally contemplates a two step analysis to determine whether the information requested constitutes a "public record." The first step requires a determination of whether the requested information falls generally within one of the two categories of "public records," those being the "account, voucher or contract" category and the "minute, order or decision" category. If it does, a determination of whether any of the stated exceptions are applicable must be made. If the information falls under one of these exceptions, then the information will not be considered a "public record" as defined by the RTKA. *Vargo v. Dept. of Corrections,* 715 A.2d 1233, 1236 (Pa.Cmwlth.1998).[5]

The focus in this appeal is on the first category, i.e., the "account, voucher, or contract" category.

■ The "account, voucher or contract" category deals generally with fiscal aspects of governance, providing for public review of accounts, vouchers or contracts "dealing with" receipts and disbursements

---

4. There is no dispute that SERS' function requires it to maintain information about Employees' salaries.

5. At the outset, this Court notes that there is no dispute that SERS is an "agency" as defined under Section 1of the RTKA, 65 P.S. § 66.1, and that as an agency, SERS is subject to the provisions of the RTKA. The parties also acknowledge that PSU is not an agency for the purpose of the RTKA. *Roy v. The Pennsylvania State University,* 130 Pa.Cmwlth. 468, 568 A.2d 751 (1990) (holding that PSU is not a state agency within the meaning of the RTKA).

of funds by an agency. When deciding if a record falls under this first category, it is necessary to examine the record concerning the relationship between the requested information and fiscally-related accounts. *LaValle.*

Our Supreme Court's decision in *Sapp Roofing Company, Inc., v. Sheet Metal Workers' International Association, Local Union No. 12*, 552 Pa. 105, 713 A.2d 627 (1998), concerned the "account, voucher or contract" category of public records. In *Sapp Roofing*, a private roofing contractor's payroll records, which had been submitted to the government in connection with the performance of a public project, were held to be public records under the RTKA. There, Sheet Metal Workers' International Association Local Union No. 12 (union) sent a written request to the Penn Hills School District (school district) seeking copies of certified payroll records compiled as a result of roofing work performed on three school buildings by Sapp Roofing, a non-union roofing company. The three roofing jobs were public projects for which the school district received state funding. The school district possessed the records pursuant to the provision of Section 6 of the Prevailing Wage Act, 43 P.S. § 165–6 [6], which required the school district to obtain certain records from the contractor prior to a final disbursement on the contract. The records requested by the union contained the names and addresses of Sapp Roofing's employees on the three roofing projects, their social security numbers and the rates of pay and hours worked on the jobs. The Supreme Court concluded that the school districts records of wages paid to the workmen fit within the statutory definition of "public records" because they evidenced a disbursement of funds by the school district. *Sapp Roofing*, 552 Pa. at 109, 713 A.2d at 629.

In *LaValle*, our Supreme Court elaborated on its decision in *Sapp Roofing* and explained that an RTKA request sometimes involves information that is not facially classified as an "account, voucher or contract." Records that do not appear to qualify as "accounts, vouchers or contracts" have been held to be public records where the information requested was sufficiently connected to or closely related to these statutory categories. *LaValle*, 564 Pa. at 493–494, 769 A.2d at 456; *North Hills News Record v. Town of McCandless*, 555 Pa. 51, 722 A.2d 1037 (1999). The RTKA favors public access regarding any expenditure of public funds.

In the present controversy, the Board concluded that Employees' salary and years of service information fit squarely within the definition of an "account, voucher or contract dealing with the receipt or disbursement of funds by an agency." 65 P.S. § 66.1 (Emphasis added).[7] The Board found that Employees' current salaries and salary histories fell within this definition because that information is sufficiently connected with or closely related to both a "contract" and an "account" which "deal with" SERS' "receipt" and its "disbursement of funds." This Court finds no error in the Board's conclusion.[8]

---

6. Act of August 15,1961, P.L. 987, *as amended.*

7. The Hearing Examiner and Board concluded that the requested records were not a minute, order, or decision of SERS that fixes any rights, privileges, immunities, duties, or obligations.

8. Initially, it must be noted that as an agency charged with execution and application of the retirement statute, the Board is entitled to considerable deference in its construction of the retirement statute and the regulations promulgated thereunder. *Burris v. State Employes' Retirement Board*, 745 A.2d 704 (Pa. Cmwlth.2000); *Harrisburg Area Cmty. Coll. v. Pennsylvania State Employees' Ret. Sys.*, 821

Initially, this Court notes, and the parties do not dispute, that PSU receives funds through Commonwealth appropriations. PSU and Employees stipulated that the university receives hundreds of millions of dollars in Commonwealth tax revenues towards its annual budget, and that tax revenues are a portion of the funds used to pay the salaries of PSU employees. Stipulation Nos. 69, 70, and 71 at 11. In addition, PSU employer contributions made on behalf of Employees are partially paid from Commonwealth resources. Stipulation No. 72 at 12. However, as the Board points out, the private or public character of the source of the funds is irrelevant. Once SERS receives member and employer contributions, those amounts are incorporated into and considered part of the State Employees Retirement Fund which is then invested and distributed in accordance with the Retirement Code.

According to the Board, *Patriot–News* and Murphy established that the retirement benefits that have accrued to each SERS member and to which each member has a vested contractual right, *must* be paid to the members upon retirement. In other words, SERS and its members have a "contractual relationship" through the pension, and that relationship is literally an agency contract dealing with the disbursement of Commonwealth funds. Abundantly clear is the fact that the rights and liabilities of SERS and its members must be determined by reference to the active member's credited service and compensation records. The Board concluded, and this Court agrees, that Employees' compensation information is instrumental in calculating a defined benefit, to which PSU employees, as active members of SERS, have a vested contractual right.

The Board reasoned that since that right involves the disbursement of Commonwealth funds, the information falls within the black letter definition of "public records." The Board correctly concluded that the Employees' salary information is no less a public record because the right to receive benefits has not yet materialized under the contract's terms. A "contract" is a public record under the RTKA as long as the contract *deals with* the appropriation of public funds.

Because Employees' compensation information is instrumental in calculating a defined benefit to which they have a *vested contractual right,* and that right unquestionably involves the *disbursement* of Commonwealth funds, the compensation information falls within the definition of public record.

This Court also agrees with the Board's conclusion that Employees' salary and service information is sufficiently connected with or closely related to an "account" which "deals with" SERS' receipt and disbursement of funds. SERS maintains a "Statement of Account" for every active member which reflects, among other information, the amount of credited service, the compensation reported to SERS by the employer, and the employee contributions made. In order to prepare and maintain the individual members' "Statements of Account", SERS assimilates Employees' salary information to arrive at the amount of employee and employer contributions, i.e., funds, it *receives.* Employees' salaries are also an integral component of the benefit formula which is used to determine the actual *and* projected benefits *disbursed* to members at termination and is relevant to the rights and entitlements of each member at any given time.[9] Again, the salary

A.2d 1255 (Pa.Cmwlth.2003). Consequently, the Board's interpretation of the retirement

statute and regulations may not be overturned, unless it is clearly erroneous. *Id.*

9. When a member retires, his or her retire-

information need not constitute *on its face,* an "account, voucher or contract," it need only be *closely related* to or *sufficiently connected to* the account. *LaValle.* In this case, Employees' salary and years of service information bear an ample connection to SERS' annual "statements of account" to qualify as a public record and, in fact, is so closely related that without this information SERS would be unable to carry out its statutory duties of providing its members with annual account statements and calculating and disbursing retirement benefits due its members.

PSU and Employees urge this Court to consider that Employees are employed by PSU, which is a non-state agency, not subject to the RTKA. This argument is not convincing. PSU employees are expressly defined as "state employees" under the Retirement Code for purposes of the Retirement Code, without exception. Section 102 of the Retirement Code, 71 P.S. § 5102.

Employees and PSU do not dispute, nor could they, that state employees' wages and earnings information is public knowl-edge and releasable as a public record of SERS. Yet, Employees ask this Court to treat them differently than other "state employee" members of SERS for purposes of determining whether their salary information should be deemed private as opposed to public. This Court declines to do that.[10]

Whether a document is a public record must be viewed from the standpoint of the agency subject to the request. The fact that PSU is not defined as a state agency does not change the public character of the information properly sought from an agency subject to the RTKA. Here, the request was made to SERS, not PSU. Because Employees' salary and years of credited service information is sufficiently connected with and closely related to SERS' preparation and distribution of its members' annual statements of account which deal with both SERS' receipt and disbursement of funds, the requested documents in SERS' possession which contain Employees' salary and years of service information constituted a "public record" under the RTKA.[11]

ment benefit is based on a standard single life annuity which is equal to 2% of the member's final average salary, multiplied by the total number of years of credited service. 71 Pa. C.S. § 5102. Final average salary is calculated based on the highest twelve consecutive non-overlapping periods of four quarters.

10. The terms and conditions of the Retirement Code, including Employees' eligibility, are public record, found in the statutes of this Commonwealth. These Employees voluntarily elected to participate in SERS. The onus rested with Employees to investigate fully the advantages and disadvantages of the plan taking into consideration the possibility that their compensation and years of service information could be disclosed by the state agency as a public record.

11. SERS' member salary information is no less a public record because Employees are "active" members of SERS, and the benefit information in statements of accounts are estimates of benefits not yet claimed. The salary data and information contained in the record is the data and information in the members' SERS accounts at a point in time which reflects the basis of the contributions received by SERS and its future benefit obligations. Contrary to Employees' contention, the RTKA does not limit the definition of public record to those documents evidencing an agency's *current* disbursements, as opposed to an agency's present contractual obligation to disburse public funds in the future. As the Board cogently observed: Employees "can consummate ·the statutorily required payment obligations of SERS at any time merely by terminating service and applying to receive whatever payments and benefits rights they are entitled to receive. The fact that they have not chosen to do so does not make the disbursement obligations of SERS less real, or reduce the level by

## B. *Exceptions*

■■■ PSU and Employees argue that, assuming *arguendo*, Employees' salary information qualifies as a "public record" under the RTKA, Employees' personal identifiable salary information is exempt from disclosure for reasons of personal security. Section 1 of the RTKA, 65 P.S. § 66.1, prohibits the disclosure of public documents, or portions thereof, which "would operate to the prejudice or impairment of a person's reputation or personal security...." "Personal security" has been defined by this Court as "freedom from harm, danger, fear or anxiety" *Times Publishing Company v. Michel*, 159 Pa. Cmwlth. 398, 633 A.2d 1233, 1236 (1993), *petition for allowance of appeal denied*, 538 Pa. 618, 645 A.2d 1321 (1994), and in *Moak v. Philadelphia Newspapers, Inc.*, 18 Pa.Cmwlth. 599, 336 A.2d 920 (1975), this Court held that disclosure of information must be intrinsically harmful to fall within the personal security exception to the RTKA.

In *Times Publishing Co. v. Michel*, this Court noted that a personal privacy right under the Pennsylvania Constitution exists under the RTKA. *Times Publishing* addressed the issue of whether portions of firearm application records that disclosed applicants' addresses, telephone and social security numbers should be withheld because the information may compromise personal security. This Court held that in analyzing the personal security exception to the RTKA, we must apply "a balancing test, weighing privacy interests and the extent to which they may be invaded, against the public benefit which would result from disclosure." *Times Publishing*, 633 A.2d at 1239.

which SERS's compensation and credit records deal with the disbursement of funds."

This Court agrees with the Board's conclusion that disclosure of Employees' salary and service information is not precluded by the personal security exception of the RTKA. First, the personal security exception has no application to the type of information sought here that could put Employees' physical or economic security at risk. As previously pointed out, Murphy specifically excluded social security numbers from her request so the nation's privacy concerns surrounding the widespread use of social security numbers as a universal identifier was not implicated.

Moreover, salary alone is not so personal and inextricably linked to an individual's identity as to threaten one's personal security. Indeed, the salaries of every state employee, including employees of this Court, are accessible as public record; so are the salaries of our state legislators. Access to this information allows the public to meaningfully evaluate the wisdom and appropriateness of these state appropriations.

Here, as previously observed, the Legislature has declared PSU Employees who elect to be members of SERS to be "state employees." This Court has concluded for the above reasons that Employees' salaries are a "public record" for purposes of the RTKA. This Court recognizes that *outside of SERS*, Employees are employees of a state-related agency, as opposed to a state agency. For the purpose of consistency, this Court must consider Employees state employees for purposes of deciding whether the exceptions apply. Simply put, Employees are not entitled to the best of both worlds. Before Employees became members of SERS they were put on notice that their compensation information was subject to disclosure. Once they became

Board Opinion, November 16, 2004, at 22.

members, although Employees themselves remained private employees of PSU, their contributions to SERS required SERS to process individual "Statements of Account" in the performance of SERS' statutory duties. Any privacy right Employees may have had in their personal salaries was extinguished when they voluntarily contracted to participate in a government program managed by a public agency for which compensation disclosure is required by law.

Because Employees have failed to convince this Court that they have a privacy right in their salary information, the personal security exception does not apply.

■■■ Next, PSU and Employees assert that personalized financial information is protected under the RTKA's second exception for records and other information for which access to, and publication of, is prohibited, restricted or forbidden by state law. Specifically, PSU and Employers contend that SERS may not release their salary information on the ground that SERS is subject to the limitations on disclosure outlined in the Gramm–Leach–Bliley Act (GLB Act), 15 U.S.C. §§ 6801, *et seq.* Section 6801 of the GLB Act provides:

Protection of nonpublic personal information

(a) Privacy obligation policy

It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information.

This Court agrees with the Board's conclusion that the GLB Act has no application to the information requested by the *Patriot–News* and Murphy. The GLB Act applies only to information obtained by financial institutions. The Board concluded that SERS does not engage in any of the following activities on behalf of its members: making loans; insuring, guaranteeing, or indemnifying against loss, harm, damage, illness, disability or death; and acting as principal, agent or broker for purpose of the foregoing; providing member specific investment advice or providing members with checking accounts.

Moreover, none of the federal or state agencies charged with GLB Act enforcement responsibility has deemed SERS to be under its jurisdiction. To the contrary, a review of the regulations enacted by the Federal Trade Commission and the Securities & Exchange Commission indicates those agencies have specifically excluded from the GLB Act's privacy requirements those fiduciaries who merely hold investments as part of an employee benefit plan. *See* 16 C.F.R. Section 313.3(e)(2)(viii) and 17 C.F.R. Section 248.3(g)(2)(viii) which provide: "An individual is not your consumer solely because he or she is a participant or a beneficiary of an employee benefit plan that you sponsor or for which you act as a trustee or fiduciary". This Court will not ignore these regulations which indicate that a consumer does not "consume" financial services solely because he or she is a participant of an employee benefit plan. Thus, SERS' members are not "consumers" under the GLB Act, and SERS is not a "financial institution." Aptly stated by *Patriot–News* and Murphy: "the [Board] is knowledgeable about the laws to which it is beholden and determined that the GLB Act is not one of them." Brief of Respondents/Intervenors Jan Murphy and The Patriot–News Company, March 30, 2004, at 26.

Because the GLB Act does not apply to SERS or the defined benefit plan it administers, SERS is not subject to the proscrip-

tions of GLB Act against the release of the requested salary information of Employees.

The decision of the Board is affirmed.

Judge SIMPSON did not participate in the decision in this case.

### ORDER

AND NOW, this 12th day of August, 2005, the order of the State Employees' Retirement Board in the above captioned case is affirmed.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority holds that the State Employees' Retirement Board (Board) properly granted the Right to Know Act[1] (RTKA) request of *The Patriot–News Company* (PNC) and Jan Murphy (Murphy), who sought to learn the salaries, salary histories and years of credited service for the following employees of The Pennsylvania State University (PSU) who are also members of the State Employees Retirement System (SERS): Richard Althouse; Rodney A. Erickson; Joseph V. Paterno; and Gary C. Schultz (collectively, Employees). I cannot agree with this holding.

### I. "Public Records"

Citizens of the Commonwealth have the right to examine an agency's "public records," which include any "account . . . or contract dealing with the receipt or disbursement of funds by an agency. . . ."

Sections 1 & 2 of the RTKA, 65 P.S. §§ 66.1–66.2. A citizen seeking to examine an agency's records must establish a close connection between the material sought and these categories. *LaValle v. Office of General Counsel,* 564 Pa. 482, 769 A.2d 449 (2001).

I agree with the majority that PNC and Murphy, the citizens here, established a close connection between Employees' salaries, salary histories and years of credited service and an account or contract dealing with the receipt or disbursement of funds by an agency. I also agree that this close connection, by itself, does *not* conclusively establish that the information sought constitutes a "public record" under the RTKA. A citizen also must establish that none of the exceptions set forth in the definition of "public records" applies.

Relevant here, the term "public record" does not include a record which "would operate to the prejudice or impairment of a person's . . . personal security. . . ."[2] 65 P.S. § 66.1. As the majority indicates, a threat to a person's personal security may involve a threat to the person's constitutional right to privacy. (Majority op. at 767); *see also Times Publishing Company v. Michel,* 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994). Where that is the case, a court must weigh a person's privacy interests and the extent to which they may be invaded against the public benefit

1. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. § 66.1–66.4, commonly known as the Right to Know Act (RTKA). I note that, in this case, the RTKA request was made on December 19, 2002, and the RTKA was amended on June 29, 2002, effective December 26, 2002, 180 days later. Thus, the request was made before the effective date of the current RTKA.

2. As the majority properly points out, this court has defined "personal security" to include freedom from anxiety. (Majority op. at 767) (citing *Times Publishing Company v. Michel,* 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993), *appeal denied,* 538 Pa. 618, 645 A.2d 1321 (1994)).

which would result from public disclosure.[3] *Id.*

## II. Reasonable Expectation of Privacy

A person has a constitutionally-protected expectation of privacy where the person has exhibited an actual, subjective expectation of privacy and where society is prepared to recognize that expectation of privacy as reasonable. *Commonwealth v. Rekasie,* 566 Pa. 85, 778 A.2d 624 (2001). In this regard, the Board made the following findings of fact:

39. It is PSU's practice and policy to preserve the confidentiality and privacy, to the maximum extent possible, of its employees' salaries and other personal financial information.

40. PSU refuses to release employee salary information when requests for that information are received from third parties.

41. PSU's practice and policy regarding nondisclosure of its employees' personal financial information has been, over time, relied upon by PSU employees such that those employees, including the Individual Respondents, expect and anticipate that PSU will, to the maximum extent possible, maintain and preserve the privacy and confidentiality of their salaries and personal financial information.

42. Specifically, [Employees] subjectively expect that their salaries and other personal financial information will not be disclosed or otherwise shared with third parties. Ms. Murphy, SERS and PNC dispute that this expectation is reasonable under the circumstances.

(Board's Findings of Fact, Nos. 39–42.) Thus, there is no question that Employees have exhibited an actual, subjective expectation of privacy in their salaries, salary histories and years of credited service. The only question is whether Employees' actual, subjective expectation of privacy should be recognized as reasonable.

### A. Paterno

First, with respect to Paterno, the Board found that Paterno has been a member of SERS since July 1, 1950, (Board's Findings of Fact, No. 5), almost seven years prior to the enactment of the RTKA on June 21, 1957. However, ignoring the date when Paterno became a member of SERS, the majority states:

Before Employees [including Paterno] became members of SERS they were put on notice that their compensation information was subject to disclosure.... [Thus,] [a]ny privacy right Employees [including Paterno] may have had in their personal salaries was extinguished when they voluntarily contracted to participate in a government program managed by a public agency for which compensation disclosure is required by law.

(Majority op. at 767–68.) Inasmuch as the RTKA did not exist, Paterno was *not* put on notice before he became a member of SERS that his compensation information was subject to disclosure. Thus, there is no basis for the majority's conclusion that Paterno's privacy right was extinguished when he voluntarily became a member of SERS in 1950. Under such circumstances, I submit that Paterno's expectation of privacy should be recognized as reasonable.

---

**3.** The majority states that, under *Moak v. Philadelphia Newspapers, Inc.,* 18 Pa.Cmwlth. 599, 336 A.2d 920 (1975), the disclosure of information must be intrinsically harmful to fall within the personal security exception to the RTKA. (Majority op. at 767.) However, this court has rejected *Moak* as contrary to our supreme court's holding in *Denoncourt v. Commonwealth State Ethics Commission,* 504 Pa. 191, 470 A.2d 945 (1983). *See Tribune-Review Publishing Company v. Bodack,* 875 A.2d 402 (Pa.Cmwlth.2005).

## B. "State Employees"

Second, under section 5102 of the Retirement Code, Employees are "state employees" for the purposes of the Retirement Code. 71 Pa.C.S. § 5102. However, Employees are *not* state employees for the purposes of section 614 of The Administrative Code of 1929,[4] which makes the salaries and employment histories of certain employees public information.

Section 614 of the Administrative Code provides as follows: (1) administrative departments, boards and commissions shall transmit to the Auditor General, State Treasurer and Secretary of the Budget a list of all persons entitled to receive compensation from the Commonwealth for services rendered; (2) the list shall include the person's salary and employment history with the Commonwealth; and (3) the information received shall be public information. 71 P.S. § 234. PSU is *not* an administrative department, board or commission; therefore, PSU is *not* required to transmit Employee information to anyone under section 614 of the Administrative Code. Thus, *no* PSU employee information is public information under section 614 of the Administrative Code.

The majority states:

This Court recognizes that *outside of SERS*, Employees are employees of a state-related agency, as opposed to a state agency. For the purpose of consistency, this Court must consider Employees state employees *for purposes of* deciding whether the exceptions [to the RTKA] apply. Simply put, Employees

are not entitled to the best of both worlds.

(Majority op. at 767) (emphasis in original). However, the Retirement Code clearly states that its definition of "state employee" applies only to the Retirement Code and section 614 of the Administrative Code clearly excludes Employees from those employees whose salaries are public information. Moreover, although the majority states that this court *must* consider Employees to be the same as every other state employee, Employees *are not the same* as other state employees because they work for a non-state agency and receive only a portion of their salaries from tax dollars.[5]

Accordingly, I would recognize Employees' expectation of privacy in their salaries, salary histories and years of credited service as reasonable.

## C. PSU and the RTKA

Third, a citizen could not obtain Employees' salaries, salary histories or years of credited service from PSU under the RTKA. *See Pennsylvania State University v. Derry Township School District*, 557 Pa. 91, 731 A.2d 1272 (1999) (citing *Roy v. Pennsylvania State University*, 130 Pa. Cmwlth. 468, 568 A.2d 751 (1990)).

In ascertaining whether Employees' salaries, salary histories and years of credited service fall within the meaning of "public record" in the RTKA, we must presume that the General Assembly does not intend a result that is absurd or unreasonable. Section 1922(1) of the Statutory Construc-

4. Act of April 9, 1929, P.L. 177, added by the Act of September 27, 1978, P.L. 775, *as amended*, 71 P.S. § 234.

5. The Board found that PSU uses "a portion" of its state appropriation to pay employee salaries. (*See* Board's Findings of Fact, No. 59.) Moreover, in *Pennsylvania State University v. Derry Township School District*, 557 Pa.

91, 94, 731 A.2d 1272, 1273 (1999), our supreme court stated, "[S]tate appropriations have decreased as a percentage of total [PSU] revenues, resulting in the fact that [PSU's] principal means of support are no longer state and federal funds but private and federal funds."

tion Act of 1972, 1 Pa.C.S. § 1922(1). To me, it is absurd that the RTKA would preclude a citizen from obtaining Employee information from PSU while allowing a citizen to obtain the same information from SERS. Thus, I would not construe the meaning of "public record" to permit such a result. In my view, the only reasonable construction of the RTKA would ensure that information unavailable from PSU under the statute also would be unavailable from SERS under the statute.

Accordingly, I would recognize Employees' expectation of privacy in their salaries, salary histories and years of credited service as reasonable.

## D. Personnel Files Act and the RTKA

Fourth, this court has held that a public employee's personnel file is not a "public record" under the RTKA and that the Act known as the Personnel Files Act [6] does not permit a citizen to inspect a public employee's personnel file. *See Bangor Area Education Association v. Angle*, 720 A.2d 198 (Pa.Cmwlth.1998), *aff'd*, 561 Pa. 305, 750 A.2d 282 (2000).

The Personnel Files Act provides that: (1) a "personnel file" includes a file containing an employee's salary and employment history, 43 P.S. § 1321; (2) an employee who wishes to inspect his or her own personnel file may be required to submit a written request so that the employer can verify the identity of the requester before providing access to the personnel file, 43 P.S. § 1322; and (3) the "employers" covered by the statute include the Commonwealth and its agencies, authorities, boards or commissions, 43 P.S. § 1321.

Thus, the RTKA and Personnel Files Act both prohibit a citizen from obtaining the salary and employment history of a Commonwealth employee from a personnel file. However, under the majority's holding, a citizen can obtain the same information from SERS under the RTKA. As indicated above, I consider such a result to be absurd. It is equally absurd that any citizen can obtain any state employee's personnel file information from SERS, but a state employee cannot obtain his or her own information from the Commonwealth's (employer) personnel department without submitting a written request. Moreover, I note that the purpose of the written request is to prevent disclosure of personnel file information to any citizen other than the employee.

Moreover, statutes in pari materia must be construed together as one statute. Section 1932(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932(b). Statutes or parts of statutes are in pari materia when they relate to the same persons or things. Section 1932(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932(a). Here, the RTKA and the Personnel Files Act are in pari materia because both relate to the public availability of employee information. Therefore, the RTKA and the Personnel Files Act must be construed as one statute. Doing so here, we see that information that impairs a person's privacy is not a "public record," and personnel file information, including salary and employment history, is private. Thus, unless there is a public benefit which outweighs the privacy interest, an employee's salary and employment history cannot be a "public record."

Accordingly, I would recognize Employees' expectation of privacy in their salaries, salary histories and years of credited service as reasonable.

### III. Public Benefit

Having concluded that Employees have a reasonable expectation of privacy in their

---

**6.** Act of November 26, 1978, P.L. 1212, *as* *amended*, 43 P.S. §§ 1321–1324.

salaries, salary histories and years of credited service, it is necessary to weigh Employees' privacy interest against the public benefit of disclosure. In this regard, the state may disclose private information where: (1) the state has a compelling interest; (2) the disclosure will effect its purpose; and (3) there is no alternate reasonable method of lesser intrusiveness. *In re T.R.*, 557 Pa. 99, 731 A.2d 1276 (1999); *Denoncourt v. Commonwealth State Ethics Commission*, 504 Pa. 191, 470 A.2d 945 (1983).

The majority states, "Access to this information [referring only to salary information [7]] allows the public to meaningfully evaluate the wisdom and appropriateness of these state appropriations [to PSU]." (Majority op. at 16.) However, the public would not know merely from the disclosure of Employees' salaries whether the state appropriations to PSU are wise and appro-

priate. Only a portion of PSU's state appropriation pays employee salaries, (Board's Findings of Fact, No. 59), and the public would not know whether Employees, in particular, received any more than a penny from the state appropriation.[8] Thus, the public disclosure of Employees' salaries would not effect the majority's stated purpose.

Accordingly, unlike the majority, I would reverse.

Judge COHN JUBELIRER joins in this dissent.

---

7. The majority does not identify any state interest in the disclosure of Employees' salary histories or years of credited service.

8. For the 2003–2004 fiscal year, PSU estimated that the state appropriation would be $306.5 million towards its budget of $2.6 billion. (Board's Findings of Fact, No. 57.) Using this estimate, the state appropriation is approximately 11.8% of PSU's budget. However, there is no finding that PSU uses the state appropriation to pay any specific portion of Employees' salaries.